2008 OK 90

Dolla GARCIA, Plaintiff/Appellant,

v.

TED PARKS, L.L.C., Forest "Butch" Freeman, the Treasurer of Oklahoma County; and the Board of County Commissioners of Oklahoma, Defendants/Appellees.

No. 105,176.

Supreme Court of Oklahoma.

Oct. 7, 2008.

Jennifer Jones, James Patrick Kelley, Oklahoma City, OK, for Plaintiff/Appellant.

Jeffery S. Ludlam, Oklahoma City, OK, for Defendant/Appellee Ted Parks, L.L.C.

KAUGER, J.

¶ 1 This cause concerns a dispute over title to a home owned since March 12, 1981, by the appellant, Dolla Garcia, also known as Dolla Moore (landowner). The appellee, Ted Parks, Inc. (Parks) asserts an interest in the property by virtue of his Certificate of Tax Deed. The legitimacy of Park's interest in the property is contingent on: 1) whether the Oklahoma County Treasurer's October 6, 2003, tax sale and the issuance of the September 6, 2007, Certificate of Tax Deed com-

plied with the constitutional and statutory procedures authorizing the sale of real property for delinquent taxes; and 2) whether, under the facts of this cause, the landowner should have been allowed either exemption or redemption.

¶2 We hold that: 1) due process requires that the landowner be given actual notice of the sale, otherwise the sale is void; 2) the notice requirements for issuing the tax deed were not met, and the tax deed is void; and 3) because the landowner is legally disabled, she is entitled to redeem the property.

## FACTS

¶3 In 2002, the landowner neglected to pay the ad valorem taxes on her home located in southeast Oklahoma City, Oklahoma. On October 6, 2003, the county treasurer placed the property for bid at public auction, and it was purchased by Heartwood 88, Inc. That same day, Heartwood assigned its interest to Parks after Parks paid the delinquent taxes for 2002, totaling $509.28.[1] It appears Parks also subsequently paid the 2003 and 2004 ad valorem taxes on the property of $449.95 and $470.06.

¶4 In March of 2002, the landowner sought, but was denied, disability insurance benefits from the Social Security Administration. The record indicates that the onset of her disability began in 2001, and it initially consisted of degenerative back impairments of the cervical and lumbar discs, affective mood disorder, and a tear of her rotator cuff. The nature of the landowner's physical and mental condition continued to decline over the next several years, and it grew to include chronic neck and back pain, anger problems, emotional disorders including anxiety and depression, neck surgery, pain and muscle spasms, memory and concentration problems, knee problems including knee surgery, and shoulder and arm problems. She has undergone many different medical treatments, several surgeries, psychotherapy, and several hospitalizations. In addition to her physical decline, she became depressed, suicidal, and socially withdrawn.

¶5 On May 10, 2006, Parks filed an Application for a Tax Deed to the landowner's home. Finally, on May 26, 2006, after another hearing from the Social Security Administration, an administrative law judge determined that the landowner had in fact been disabled under the Social Security Act since March of 2002 and that she qualified for benefits. The record is unclear as to when, but at some point after she was determined totally disabled by the Social Security Administration, she started receiving a monthly check of $1,226.00.

¶6 The landowner was again admitted to the hospital on June 28, 2006. A few days later, on July 4, 2006, Johnny Moore, the landowner's son (son) who lived in Tulsa, Oklahoma, was in town to visit his mother. While he was dropping off his belongings at his mother's house for an overnight stay, a process server appeared at the house. Even though he told the process server that he did not reside at the home, the process server handed him a "Notice of Application for Tax Deed." According to the process server, the son stated that he did reside at the home. Regardless, the son, without reading the paperwork, left it on the kitchen table for his mother to find.

¶7 The landowner was released from the hospital on July 9, 2006, and allegedly she did not discover the "Notice" until late July. On July 28, 2006, the landowner signed an application for exemption from tax sale stating that: 1) she was the record owner of the disputed property; 2) she was 65 years old or older or is totally disabled; 3) the fair market value of the property does not exceed $125,000.00; and 4) her gross household income had been $300.00 monthly or approximately $4,300.00 annually (she does not mention whether she was also receiving the additional social security benefits at this time). On September 7, 2006, the Oklahoma County Treasurer issued a Certificate of Tax Deed for the disputed property to Parks. The deed was recorded on September 8, 2006.

---

1. Although the record is unclear, it appears that Parks obtained its interest in the property from Heartwood 88 Inc., which bid at public auction.

¶ 8 On December 11, 2006, the landowner filed a Petition to Set Aside Tax Deed and to Quiet Title. She sought to clear her title of the cloud the tax deed presented on her property. She alleged that: 1) the purported tax deed was void because she was not given sufficient notice of the Application for Tax Deed; and 2) she was entitled to redemption of any alleged past-due tax assessments. The landowner tendered $2,210.78, the amount of taxes, penalties, costs and interest which she believed to be due as of March 6, 2006, to the county.

¶ 9 The trial court ignored the existence of disputed fact issues regarding whether the son lived with his mother, as the process server claimed, or whether he lived in Tulsa, as he and the landowner claimed. It granted summary judgment in favor of Parks and against the landowner on June 22, 2007.

¶ 10 Because the landowner suffered from a mental condition which severely limited her ability to manage her financial affairs, Wilmer Louis Garcia, her ex-husband, was appointed her limited guardian on July 31, 2007. She filed a Motion for New Trial/Reconsideration on August 20, 2007, arguing that: 1) notice of the tax deed application was improperly served and inadequate; and 2) new evidence had come to light regarding the July 31, 2007, guardianship appointment over her because of a mental condition and a

determination of disability by the Social Security Administration in May of 2006, that declared her disabled since March 5, 2002. The trial court denied the motion for new trial, and the landowner appealed. The Court of Civil Appeals affirmed, and we granted certiorari on June 16, 2008.

### I.

¶ 11 **DUE PROCESS REQUIRES THAT THE LANDOWNER BE GIVEN ACTUAL NOTICE OF THE SALE. OTHERWISE, THE SALE IS VOID.**

¶ 12 It is unclear from the record whether the initial tax sale was valid. Delinquent taxes owed on real property are considered a lien upon the property for seven years from the date they are due and payable.[2] The procedures for collecting delinquent ad valorem taxes are set forth in the Oklahoma Tax Code, 68 O.S.2001 §§ 3101 *et seq.* Pursuant to 68 O.S. Supp.2007 § 3105, a county treasurer may sell real property located within the county to pay delinquent taxes.[3] However, before a tax sale is held, notice to the landowner is required. Title 68 O.S.2001 § 3106 requires the county to publish notice of the sale of real property for delinquent taxes in a newspaper, and it also mandates actual notice to the record owner by certified mail.[4] However, the statute also provides

---

2. Title 68 O.S.2001 § 3101 provides:
   Taxes upon real property are hereby made a lien for seven (7) years from the date upon which such tax became due and payable.
   *See also,* 68 O.S. Supp.2004 § 3102 and 68 O.S. 2001 § 3103 which set forth procedural requirements for personal property tax liens.

3. Title 68 O.S. Supp.2007 § 3105.

4. Title 68 O.S.2001 § 3106 provides:
   The county treasurer shall give notice of the sale of real property for delinquent taxes and special assessments by publication of said sale once a week for the two (2) consecutive weeks immediately prior to the third Friday in September preceding the sale, in some newspaper in the county to be designated by the county treasurer. Such notice shall contain a notification that all lands on which the taxes are delinquent and remain due and unpaid will be sold, the time and place of the sale, a list of the lands to be sold, the name or names of the last owner or owners as reflected by the records in the office of the county treasurer, and the

amount of taxes due and delinquent. Such notice shall also contain the following language: "The sale hereby advertised is conditional and subject to a two-year right of redemption by the record owner as provided in Section 24323 of Title 68 of the Oklahoma Statutes." If the sale involves property upon which is located a manufactured home the notice shall also contain the following language: "The sale hereby advertised involves a manufactured home which may be subject to the right of a secured party to repossess. A holder of a perfected security interest in such manufactured home may be able to pay ad valorem taxes based upon the value of the manufactured home apart from the value of real property. If a secured party exercises this right, the holder of the tax sale certificate will be refunded the amount of taxes paid upon the value of the manufactured home." In addition to said published notice, the county treasurer shall give notice by certified mail by mailing to the owner of said real property, as shown by the last tax rolls in his office, a notice of said sale stating the time and place of said sale and

that failure to receive notice shall not invalidate the sale.[5] The record does not disclose when or if the landowner was served actual notice that her property was going to be sold by the county assessor on October 6, 2003—the event that triggered this dispute.

¶ 13 This Court has long recognized that the statutory notice provisions for a tax sale are mandatory, and the absence of such notice nullifies the sale of the property.[6] Recently, in *Southwestern Commercial Capital, Inc. v. Cornett Packing Co.*, 2000 OK 19, ¶ 16, 997 P.2d 849, when discussing the due process requirement of notice of a tax sale to interested parties, we noted that:

> It is a fundamental tenet of constitutional law that one may not be deprived of a valuable property interest without first giving notice 'reasonably calculated under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.... It would be idle to pretend that publication alone ... is a reliable means of acquainting interested parties of the fact that their rights are before the courts.' *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Notice by publication will not bind a party who,

like the mortgagee here, is readily identifiable.

¶ 14 In *Wells Fargo Credit Corp. v. Ziegler*, 1989 OK 113, ¶ 6, 780 P.2d 703, the county treasurer failed to give a mortgagee actual notice of a resale of a tax deed. The Court held that certified mail notice which was returned unclaimed was constitutionally insufficient to give the county treasurer the right to conduct a tax resale which would abrogate the mortgagee's interest. In *Luster v. Bank of Chelsea*, 1986 OK 74, ¶ 18, 730 P.2d 506, the Court held that a resale tax deed was void because the county treasurer unconstitutionally exercised jurisdiction over the original sale and resale upon which the resale tax deed was based, where the treasurer had not properly mailed notice to the actual owner of the property.

¶ 15 Clearly, to the extent that the statute implies that the failure to give actual notice to a record owner who was living on the property and whose whereabouts were known does not affect the validity of the tax sale, it conflicts with constitutionally protected due process notice requirements.[7] A constitutionally deficient tax sale is void and ineffective, and failure to comply with the notice requirements deprives the county treasurer of jurisdiction.[8]

---

showing the legal description of the property of the owner being sold. Failure to receive said notice shall not invalidate said sale. The county treasurer shall charge and collect, in addition to the taxes, interest and penalty, the publication fees as provided by the provisions of Section 121 of Title 28 of the Oklahoma Statutes, and Five Dollars ($5.00) plus postage for mailing the notice by certified mail, which shall be paid into the county treasury, and the county shall pay the cost of the publication of such notice. But in no case shall the county be liable for more than the amount charged to the delinquent lands for advertising and the cost of mailing.

The statute was amended in 2007, but the pertinent portions remain substantially unchanged.

**5.** Title 68 O.S.2001 § 3106, see note 4, supra.

**6.** *Smith v. Bostaph*, 1924 OK 937, ¶ 0, 229 P. 1039; *Clark v. Duncanson*, 1920 OK 289, ¶ 0, 192 P. 806.

**7.** The Okla. Const. art. 2, § 7 provides:

No person shall be deprived of life, liberty, or property, without due process of law.

The United States Supreme Court in *Jones v. Flowers*, 547 U.S. 220, 228–29, 126 S.Ct. 1708, 1715–16, 164 L.Ed.2d 415, recognized that while due process does not always require that a property owner receive actual notice before government may take his property, it also recognized that the United States Constitution requires follow-up when certified mail notice of a tax sale is returned unclaimed, even though the mailings satisfied the reasonably calculated test established in *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The Court noted that failure to follow up would be unreasonable, despite the fact that the letters were reasonably calculated to reach their intended recipients when delivered to the postman.

**8.** *Wells Fargo Credit Corp. v. Ziegler*, 1989 OK 113, ¶ 6, 780 P.2d 703; *Luster v. Bank of Chelsea*, 1986 OK 74, ¶ 18, 730 P.2d 506; *Clark v. Duncanson*, see note 6, supra. Although Court of Civil Appeals decisions are non-precedential, the Court has also recently determined that inadequate notice of a tax sale resulted in a void sale. *Franks v. Noble*, 2007 OK CIV APP 39, ¶ 14, 159 P.3d 302; *Decker v. James*, 2000 OK CIV APP 126, ¶ 8, 16 P.3d 1131, *cert. denied* 531 U.S. 1153, 121 S.Ct. 1100, 148 L.Ed.2d 972 (2001).

## II.

¶ 16 **THE NOTICE REQUIREMENTS FOR ISSUING THE TAX DEED WERE CLEARLY NOT MET. CONSEQUENTLY, THE TAX DEED IS ALSO VOID.**

¶ 17 When a tax sale is held by the county treasurer, the first person to pay the delinquent taxes in full with accompanying costs is issued a certificate of tax sale.[9] After that sale, the purchaser must wait two years for the record owner to pay the back taxes, interest, and costs. If the owner does not do so within that period, the holder of the certificate can exchange the certificate of tax sale for a deed to the land.[10] Pursuant to 68 O.S. Supp.2002 § 3118, to obtain the deed, the holder of the certificate must serve the record owner with notice of the application for the tax deed. Thereafter, the record owner has 60 days to redeem the property.[11]

¶ 18 In matters pertaining to tax sales, statutes prescribing the manner of service of notice and the issuance of tax deeds

9. Title 68 O.S.2001 § 3108.

10. Title 68 O.S. Supp.2002 § 3118 provides:

A. If no person shall redeem any land on which the tax lien has been sold within two (2) years, at any time after the expiration, thereafter and on production of the certificate of purchase, the county treasurer of the county in which the sale of such land took place shall execute to the purchaser, or the heirs or assigns of the purchaser, a deed for land remaining unredeemed. The deed shall vest in the grantee an absolute estate in fee simple in the lands, subject however, to all claims which the state may have on the lands for taxes or other liens or encumbrances and shall extinguish the rights of any mortgagee of record of the lands to whom notice was sent as provided for by law. However, before any holder of a certificate of purchase issued at any tax sale of real estate shall be entitled to a deed as provided in this section, the holder of a certificate of purchase shall cause a written notice signed by such holder to be served, either by process server, by the sheriff or by restricted certified mail with return receipt requested, upon the owner of the land if the owner is within the state, upon the person in possession of the land, if the same be occupied, and upon all mortgagees and lienholders of record of the land, which notice shall recite the sale of the lands, specifying the date of such sale and notifying such person that unless redemption is made from such sale within sixty (60) days after the date of the service of such notice, a tax deed will be demanded and will issue as provided by law. If the real property to be sold is listed as homestead property on the last tax rolls, then in addition to all other notification requirements, the applicant shall also cause the notice of sale to be posted on the front door of the property by the county sheriff at least thirty (30) days prior to such deed being issued. The cost of the posting of the notice shall be added to the amount necessary to redeem the property from sale.
B. If it shall be made to appear by the affidavit of the holder of the tax certificate or such person's agent, filed in the office of the county clerk, that the owner or any mortgagee or lienholder of record of the real estate are non-residents of the state, or that the residence or place of business of such owner or any mortgagee or lienholder of record is not known to the holder of such tax certificate, and cannot be ascertained by any means within the control of such holder of the tax certificate, and that the holder of such tax certificate cannot by the exercise of reasonable diligence make service upon such owner or any mortgagee or lienholder of record within the state, then in such cases, service shall be made by publication for three (3) successive weeks in some newspaper of general circulation published at the county seat of the county in which such real estate is situated, and the sixty (60) days shall begin to run from the date of the first publication of such notice. Until the expiration of the sixty (60) days, redemption may be made by any person authorized by law to redeem. All service and return shall be made in the same manner as that of summons in courts of record. The notice, with the tax sale certificate, after being duly served or published, or both, shall be returned and filed in the office of the county clerk, who shall make notation of its date and the date of service on the delinquent sale record, and the fee for such service and publication shall be the same as for like service of summons, and shall be added to the amount necessary to redeem such sales along with any title search fees, if the title search is obtained through the county treasurer's office. The notice provided for in this section may be served at any time after a date not exceeding sixty (60) days prior to the expiration of two (2) years subsequent to the day of sale. Neither failure to send notice to any mortgagee or lienholder of record of the land nor failure to receive notice as provided for by this section shall invalidate the certificate tax sale, but the certificate tax sale deed shall be ineffective to extinguish any mortgage or lien on the lands of a mortgagee or lienholder to whom no notice was sent.

11. Title 68 O.S. Supp.2002 § 3118, see note 10, supra.

are mandatory.[12] The court may set aside a tax deed if the certificate holder fails to comply with the statutory notice requirements.[13] The fact that a property owner has actual knowledge of a proceeding to obtain a tax deed does not relieve the person seeking the deed from complying with the applicable notice statutes.[14] A tax deed issued under a defective notice is void.[15]

¶ 19 In *Shamblin v. Beasley*, 1998 OK 88, 967 P.2d 1200, the Court addressed whether service of pre-sale notice on the wife-owner by delivery to her husband satisfied the fundamental due process standards. In discussing due process, the Court noted that when it is alleged that the statutory requirements for service were not strictly complied with, the court must determine whether the departure offended the standards of due process and deprived the party of a fundamental right to notice. In *Shamblin*, it was the totality of circumstances—not the particular norms of statutory requirements—that dictated the quality of service necessary to safeguard an individual's property interest at stake. The constitutional norms required for due process are not dependent on where service was effected on another. Rather, the fundamental-law test is based on the reasonable probability that the person to whom service is directed will receive actual notice from one who

accepted service for another as the latter's lawful designee.

¶ 20 The factors we considered in *Shamblin* to conclude that service on the husband was effective were such things as: 1) existence of spousal status; 2) joint ownership of the property in question; 3) the legal impact of the proceedings for tax resale of their owners' interests; 4) the fact of cohabitation and maintaining a joint residence in a common dwelling; and 5) the homestead status of the property. Our holding in *Shamblin* was expressly "not to be enlarged by reading into it the principle that the wife would be bound by service delivered to the husband in a context other than the circumstances presented by this case."

¶ 21 Obviously, *Shamblin* is not controlling. Here, service was made on the son who merely stopped by his mother's property on the way to visit her in the hospital. Even if applied in the context of a mother/son relationship rather than a spousal relationship, not one *Shamblin* factor exists. Nor does applying the "totality of the circumstances" test result in a "reasonable probability" that the landowner would have received actual notice by serving the son while his mother was hospitalized. Service was clearly ineffective and contrary to 12 O.S.2001 § 2004.[16]

12. *Smith v. Bostaph*, see note 6, supra; *Clark v. Duncanson*, see note 6, supra.

13. *Jones v. Buford*, 1961 OK 20, ¶ 9, 359 P.2d 232.

14. *Jones v. Buford*, see note 13, supra; *Gregg v. Leach*, 1930 OK 433, ¶ 11, 292 P. 58.

15. *Cornelius v. McKee*, 1952 OK 266, ¶ 13, 246 P.2d 725; *Westerheide v. Wilcox*, 1942 OK 131, ¶ 29, 124 P.2d 409.

16. Title 12 O.S.2001 § 2004 provides in pertinent part:
... C. BY WHOM SERVED: PERSON TO BE SERVED.
1. SERVICE BY PERSONAL DELIVERY.
a. At the election of the plaintiff, process, other than a subpoena, shall be served by a sheriff or deputy sheriff, a person licensed to make service of process in civil cases, or a person specially appointed for that purpose. The court shall freely make special appointments to serve all process, other than a subpoena, under this paragraph.

b. A summons to be served by the sheriff or deputy sheriff shall be delivered to the sheriff by the court clerk or an attorney of record for the plaintiff. When a summons, subpoena, or other process is to be served by the sheriff or deputy sheriff of another county, the court clerk shall mail it, together with his voucher for the fees collected for the service, to the sheriff of that county. The sheriff shall deposit the voucher in the Sheriff's Service Fee Account created pursuant to Section 514.1 of Title 19 of the Oklahoma Statutes. The sheriff or deputy sheriff shall serve the process in the manner that other process issued out of the court of the sheriff's own county is served. A summons to be served by a person licensed to make service of process in civil cases or by a person specially appointed for that purpose shall be delivered by an attorney of record for the plaintiff to such person.
c. Service shall be made as follows:
(1) Upon an individual other than an infant who is less than fifteen (15) years of age or an incompetent person, by delivering a copy of the summons and of the petition personally or by leaving copies thereof at the person's dwell-

¶ 22 The landowner does admit discovering the notice on her kitchen table by the end of July 2006. Were we to consider this actual notice, the landowner still should have been given 60 days after receiving it to redeem the property—until the end of September. However, the tax deed was issued on September 7, 2006, and filed the next day. It was void because it was issued before the landowner's opportunity of redemption, pursuant to 68 O.S. Supp. § 3118, had expired.[17]

### III.

### ¶ 23 THE LANDOWNER IS LEGALLY DISABLED AND IS ENTITLED TO REDEEM THE PROPERTY.

¶ 24 There are cumulative reasons which require vacation of the tax deed. Not only was notice defective, the landowner

qualified for a redemption. The version of 68 O.S. Supp.2002 § 3105 in effect when the tax sale was held provided an exemption from the sale of property when the following conditions were met:

1) the property was a single-family dwelling;

2) the individual residing on the property was 65 or older;

3) the real property is not being used as rental property;

4) the income of the individual living on the property does not exceed poverty guidelines; and

5) the fair market value of the property does not exceed $125,000.[18]

¶ 25 The statute places the duty on the landowner to apply for an exemption no later than 60 days prior to the date the property is scheduled to be sold.[19] On the date of the

---

ing house or usual place of abode with some person then residing therein who is fifteen (15) years of age or older or by delivering a copy of the summons and of the petition to an agent authorized by appointment or by law to receive service of process; ...

**17.** Title 68 O.S. Supp.2002 § 3118, see note 10, supra.

**18.** Title 68 O.S. Supp.2002 § 3105 provided:
A. The county treasurer shall in all cases, except those provided for in subsection B of this section, where taxes are a lien upon real property and are unpaid on the first day of April of any year proceed, as hereinafter provided, to advertise and sell such real estate for such taxes, special assessments and costs, and shall not be bound before so doing to proceed to collect by sale all personal taxes on personal property which are by this Code made a lien on realty, but shall include such personal tax with that due on the realty, and shall sell the realty for all of said taxes and special assessments.
B. In counties with a population in excess of one hundred thousand (100,000) persons according to the most recent federal decennial census, the county treasurer shall not conduct a tax sale of such real estate where taxes are a lien upon real property if the following conditions are met:
1. The real property contains a single-family residential dwelling;
2. The individual residing on the property is sixty-five (65) years of age or older and owes the taxes due on the real property;
3. The real property is not currently being used as rental property;
4. The individual living on the property has an annual income that does not exceed the

HHS Poverty Guidelines as established each year by the United States Department of Health and Human Services that are published in the Federal Register and in effect at the time that the proposed tax sale is to take place; and
5. The fair market value of the real property as reflected on the tax rolls in the office of the county assessor does not exceed One Hundred Twenty-five Thousand Dollars ($125,000.00).
C. It shall be the duty of the individual owning property subject to the provisions of subsection B of this section to make application to the county treasurer for an exemption from a tax sale no later than sixty (60) days prior to the date the property is scheduled to be sold. It shall also be the duty of the individual to provide evidence to the county treasurer that the individual meets the financial requirements outlined in paragraph 4 of subsection B of this section to qualify for the exemption. Any individual claiming the exemption provided in this section shall establish eligibility for the exemption each year the exemption is claimed.
D. Taxes, interest and penalties will continue to accrue while the exemption is claimed. The exemption from sale of property described in this section shall no longer be applicable and the county treasurer shall proceed with the sale of such real estate if any of the conditions prescribed in this section are no longer met.
E. Every notice of tax sale or tax resale shall contain language approved by the Office of the State Auditor and Inspector informing the taxpayer of the provisions of this section.

**19.** Title 68 O.S. Supp.2002, § 3105, see note 18, supra.

sale, the landowner did not qualify for the exemption.[20] However, on November 1, 2003, just a few weeks after the tax sale was held, a new version of this statute went into effect. This 2003 version allowed persons who have been classified as "totally disabled" to also qualify for the exemption from sale.[21] The statute defined "totally disabled" as:

C. As used in this section, a person who is 'totally disabled' means a person who is unable to engage in any substantial gainful activity by reason of a medically determined physical or mental impairment which can be expected to last for a continuous period of twelve (12) months or more. Proof of disability may be established by certification by an agency of state government, an insurance company, or as may be required by the county treasurer. Eligibility to receive disability benefits pursuant to a total disability under the Federal Social Security Act shall constitute proof of disability for purposes of this section.

By the time this version of the statute became effective, the landowner could have qualified as a disabled person under the statute, but the tax sale had already occurred. Here, we do not apply the after-enacted statute because it was not in effect at the time of the sale. Consequently, the question then becomes whether she is entitled to redeem the property.

■ ¶ 26 Oklahoma law favors redemption. In *Sherrill v. Deisenroth*, 1975 OK 136, ¶ 22, ¶ 24, 541 P.2d 862, the Court addressed the right of redemption by a land-

20. While the record is unclear as to the landowner's precise age, the Social Security Administration documents refer to her as being between 45 and 49 years old on the date disability is established.

21. Title 68 O.S. Supp.2003 § 3105 provided:

A. The county treasurer shall in all cases, except those provided for in subsection B of this section, where taxes are a lien upon real property and are unpaid on the first day of April of any year proceed, as hereinafter provided, to advertise and sell such real estate for such taxes, special assessments and costs, and shall not be bound before so doing to proceed to collect by sale all personal taxes on personal property which are by law made a lien on realty, but shall include such personal tax with that due on the realty, and shall sell the realty for all of the taxes and special assessments.

B. In counties with a population in excess of one hundred thousand (100,000) persons according to the most recent federal decennial census, the county treasurer shall not conduct a tax sale of such real estate where taxes are a lien upon real property if the following conditions are met:

1. The real property contains a single-family residential dwelling;

2. The individual residing on the property is sixty-five (65) years of age or older or has been classified as totally disabled, as defined in subsection C of this section, and such individual owes the taxes due on the real property;

3. The real property is not currently being used as rental property;

4. The individual living on the property has an annual income that does not exceed the HHS Poverty Guidelines as established each year by the United States Department of Health and Human Services that are published in the Federal Register and in effect at the time that the proposed tax sale is to take place; and

5. The fair market value of the real property as reflected on the tax rolls in the office of the county assessor does not exceed One Hundred Twenty-five Thousand Dollars ($125,000.00).

C. As used in this section, a person who is "totally disabled" means a person who is unable to engage in any substantial gainful activity by reason of a medically determined physical or mental impairment which can be expected to last for a continuous period of twelve (12) months or more. Proof of disability may be established by certification by an agency of state government, an insurance company, or as may be required by the county treasurer. Eligibility to receive disability benefits pursuant to a total disability under the Federal Social Security Act shall constitute proof of disability for purposes of this section.

D. It shall be the duty of the individual owning property subject to the provisions of subsection B of this section to make application to the county treasurer for an exemption from a tax sale no later than sixty (60) days prior to the date the property is scheduled to be sold. It shall also be the duty of the individual to provide evidence to the county treasurer that the individual meets the financial requirements outlined in paragraph 4 of subsection B and all other requirements of this section to qualify for the exemption. Any individual claiming the exemption provided in this section shall establish eligibility for the exemption each year the exemption is claimed.

E. Taxes, interest and penalties will continue to accrue while the exemption is claimed. The exemption from sale of property described in this section shall no longer be applicable and the county treasurer shall proceed with the sale of such real estate if any of the conditions prescribed in this section are no longer met.

owner and the policy behind it. The Court noted that:

> ... The taking of a taxpayer's property for taxes is an involuntary exaction by the state, and the tax-gathering authorities must stay strictly within the provisions of the law authorizing the collection of such taxes or taking of such property. Nothing is to be indulged in their favor, or in favor of grantees of property sold for taxes and undertaken to be conveyed by the tax-gathering authorities. This Court has recognized that statutory provisions relating to redemption from tax sale must be construed liberally in favor of redemption ... We conclude that the removal of a citizen from his land by reason of tax delinquency is repugnant and offends the innate sense of justice in each citizen. The Legislature, recognizing this, established clear unequivocable guidelines in the disenfranchising process with liberal redemption rights allowed to the landowner.... Public policy favors redemption by payment of all delinquent taxes prior to the execution of a deed by the county treasurer.

In other words, every opportunity is to be afforded persons entitled to redeem real estate from a lien resulting from a tax sale prior to the execution of a tax deed by the country treasurer. Until a tax deed, valid on its face, has been issued and delivered, the landowner has the right to redeem from the tax sale or resale.[22]

■ ¶ 27 Here, the landowner attempted to file an **exemption** from sale nearly three years after the sale had occurred, and she attempted to **redeem** the property when she filed her petition in district court. Although it might appear that the landowner's initial attempt at redemption was untimely,[23] § 3113 of title 68 provides an exception to the general rule that redemption may occur anytime before execution of a deed by the county treasurer. The exception is relevant here. It allows landowners who are minors, *or* incapacitated under a disability to "redeem from taxes any property ... within one year after the expiration of such disability." [24]

---

**22.** *Petrovics v. Brown*, 1951 OK 173, ¶ 4, 235 P.2d 708.

**23.** She offered the funds for redemption to the trial court when she filed her petition to set aside the tax deed pursuant to 68 O.S.2001 § 3140 which provides:

> To defeat the deed, the person desiring to set the same aside and recover the land, or to resist the recovery of possession by the holder of the deed, in addition to showing clearly the entire failure to do some one or all the things of which the tax deed is made presumptive evidence, must show that he or the person under whom he claims had the right to redeem the land from tax sale at the time the deed was made, and must, when his action to set aside the tax deed is brought, or a defense to a recovery of possession is pleaded, tender in open court for the use of the holder of the tax deed, all taxes, penalties, interests and costs, which the party seeking to redeem would be bound to pay if he was then redeeming the land from tax sale, and on failure so to do, his action or defense, as the case may be, shall be dismissed. The rule that tax proceedings are to be strictly construed as against the tax purchaser, shall not apply to proceedings under this article, but in all courts its provisions shall be liberally construed, to the end that its provisions and all proceedings thereunder shall be sustained.

**24.** Title 68 O.S.2001 § 3113 provides:

> The owner of any real estate sold for taxes, or any person having a legal or equitable interest therein, may redeem the same from the lien resulting from tax sale at any time before the execution of a deed of conveyance therefor by the county treasurer, by paying to the county treasurer, if the tax sale certificate is held by an individual purchaser, the sum paid to the county for such certificate and all taxes paid and endorsed thereon, together with interest thereon at the rate of eight percent (8%) per annum from the date of sale or purchase thereof from the county, and interest at the rate of eight percent (8%) per annum on taxes endorsed on such certificate from the date of each such endorsement, and in addition thereto costs provided in this article, for the use of the owner of the certificate of such sale, and the county treasurer shall hold the money paid to the order of such certificate owner, his or her agent, or attorney; and if the county is the holder of such tax lien, by paying to the county treasurer the sum for which the property was sold with penalty at the rate of twelve percent (12%) per annum and such additional costs as may have accrued; provided, that minors or incapacitated or partially incapacitated persons may redeem from taxes any real property belonging to them within one (1) year after the expiration of such disability, with interest and penalty at not more than ten percent (10%) per annum. Upon such redemption, the county treasurer shall enter the same upon the sales record, giving a receipt therefor to the person

¶ 28 In *Shamblin v. Beasley*, 1998 OK 88, ¶ 8, 967 P.2d 1200, a case involving an ejectment of spousal possessors from land, we recognized the rule that a resale tax deed, facially meeting the basic statutory prerequisites, cuts off the redemption opportunity for those affected parties **who are not then under a legal disability.** In *Sherrill v. Deisenroth*, supra, we also noted that the right of redemption of a landowner in a tax resale, **not suffering from a statutory disability,** ceases upon the execution of a valid tax deed by the county treasurer.

¶ 29 In *Ray v. Williams*, 1954 OK 339, ¶ 0, 278 P.2d 550, the Court addressed a predecessor of § 3113 as applied to minors. It recognized that the statute clearly provides that minors shall have the right to redeem any land owned by them or in which they have a legal or equitable interest from the lien resulting from tax sale within one year after expiration of their disability. The Court stated that such provisions for redemption by minors and other persons under disability are incidental to the main purpose of the act. It also noted that this right of redemption may not be cut off by the court, nor may the property owner be forced to redeem prior to the expiration of the time given by statute. The same rationale has also been applied to an incompetent person [*Beane v. Kinney*, 1945 OK 161, ¶ 6, 158 P.2d 1009], a physically and mentally incapacitated person [*Brown v. Chaddick*, 1946 OK 243, ¶ 2, 172 P.2d 996], and an insane person [*Parks v. Clark*, 1943 OK 132, ¶ 0, 136 P.2d 199].

¶ 30 Here, by May 26, 2006, the Social Security Administration had determined that the landowner had been disabled under the Federal Social Security Act since March 5, 2002.[25] Under the terms of § 3105, the land-

redeeming, file the duplicate with the county clerk, and retain the triplicate in the county treasurer's office.

25. The statute was again amended in 2007, dropping the 60 day time limit. Title 68 O.S. Supp. 2007 § 3105 provides:

A. The county treasurer shall in all cases, except those provided for in subsection B of this section, where taxes are a lien upon real property and are unpaid on the first day of April of any year proceed, as hereinafter provided, to advertise and sell such real estate for such taxes, special assessments and costs, and shall not be bound before so doing to proceed to collect by sale all personal taxes on personal property which are by law made a lien on realty, but shall include such personal tax with that due on the realty, and shall sell the realty for all of the taxes and special assessments.

B. In counties with a population in excess of one hundred thousand (100,000) persons according to the most recent federal decennial census, the county treasurer shall not conduct a tax sale of such real estate where taxes are a lien upon real property if the following conditions are met:

1. The real property contains a single-family residential dwelling;

2. The individual residing on the property is sixty-five (65) years of age or older or has been classified as totally disabled, as defined in subsection C of this section, and such individual owes the taxes due on the real property;

3. The real property is not currently being used as rental property;

4. The individual living on the property has an annual income that does not exceed the HHS Poverty Guidelines as established each year by the United States Department of Health and Human Services that are published in the Federal Register and in effect at the time that the proposed tax sale is to take place; and

5. The fair market value of the real property as reflected on the tax rolls in the office of the county assessor does not exceed One Hundred Twenty-five Thousand Dollars ($125,000.00).

C. As used in this section, a person who is "totally disabled" means a person who is unable to engage in any substantial gainful activity by reason of a medically determined physical or mental impairment which can be expected to last for a continuous period of twelve (12) months or more. Proof of disability may be established by certification by an agency of state government, an insurance company, or as may be required by the county treasurer. Eligibility to receive disability benefits pursuant to a total disability under the Federal Social Security Act shall constitute proof of disability for purposes of this section.

D. It shall be the duty of the individual owning property subject to the provisions of subsection B of this section to make application to the county treasurer for an exemption from a tax sale prior to the property being sold. It shall also be the duty of the individual to provide evidence to the county treasurer that the individual meets the financial requirements outlined in paragraph 4 of subsection B and all other requirements of this section to qualify for the exemption. Any individual claiming the exemption provided in this section shall establish eligibility for the exemption each year the exemption is claimed.

E. Taxes, interest and penalties will continue to accrue while the exemption is claimed. The exemption from sale of property described in

owner has now been under a legal disability since March of 2002. Pursuant to § 3113, she has the statutory right to redeem her property within one year after the expiration of her disability. Title 68 O.S.2001 § 3140 [26] delineates the procedure to cancel a tax deed, and it allows the landowner to show that she was entitled to redemption. Here, her time limit to redeem has not begun to run. The trial court clearly erred in not allowing her to redeem her property under the facts presented.

## CONCLUSION

¶ 31 The purpose of the statutory procedure for collecting delinquent taxes is two-fold. It serves to provide an opportunity for the county treasurer to collect taxes which are due. It also serves to protect property owners and provide every opportunity possible for them to redeem their property before it is taken. Additional measures are in place for landowners who are incapacitated or under a disability because the statutory procedures were not intended as a way to manipulate elderly or disabled people out of their homes. Under the facts of this cause, a mentally and physically disabled landowner is ready, willing, and able to redeem her property and pay the delinquent taxes, but the "process" has been sidestepped so that she can be removed from her property. The cause is remanded to the trial court for further proceedings consistent with our pronouncement.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT REVERSED AND CAUSE REMANDED.**

EDMONDSON, V.C.J., OPALA, KAUGER, WATT, TAYLOR, COLBERT, JJ., concur.

WINCHESTER, C.J., HARGRAVE, J., dissent.

this section shall no longer be applicable and the county treasurer shall proceed with the sale of such real estate if any of the conditions prescribed in this section are no longer met. F. Every notice of tax sale or tax resale shall contain language approved by the Office of the

REIF, J., concurs in result:

I concur to grant certiorari. I do so on the narrow ground that there is a controversy over the service of the application for tax deed. If the trier of fact resolves this controversy in favor of the Owner, the tax deed fails for invalid notice. If the trier of fact resolves this issue in favor of the Applicant I believe there is no other ground upon which to set aside the tax deed.