2011 OK CIV APP 7

Christopher E. BENTON a/k/a Christopher Benton, Plaintiff/Appellee,

v.

TED PARKS, LLC, Defendant/Appellant,

and

Forrest "Butch" Freeman and Board of County Commissioners of Oklahoma County, Defendants.

No. 108,077.

Court of Civil Appeals of Oklahoma, Division No. 2.

Dec. 2, 2010.

John Fredrick Kempf, Lance E. Schneiter, Andrews Davis, a Professional Corporation, Attorneys and Counselors at Law, Oklahoma City, OK, for Plaintiff/Appellee.

Jeffery S. Ludlam, Trevor S. Pemberton, Mulinix Ogden Hall Andrews & Ludlam, Oklahoma City, OK, for Defendants/Appellants.

JANE P. WISEMAN, Chief Judge.

¶1 Ted Parks, LLC, appeals from an order of the trial court granting the motion for summary judgment filed by Christopher E. Benton and denying the motion for summary judgment filed by Parks. The issue presented is whether Benton was entitled to judgment as a matter of law. This appeal is governed by Supreme Court Rule 1.36, 12 O.S. Supp.2010, ch. 15, app. 1, and proceeds without appellate briefing. After review of the record and applicable law, we conclude there is no evidence that proper notice of the tax sale was provided to the property owner by the county treasurer. The sale, therefore, was void. Accordingly, we affirm the decision of the trial court granting summary judgment in favor of Benton.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Benton filed a petition to vacate a certificate tax deed and quiet title to a parcel of real property located in Oklahoma City, Oklahoma, and named as defendants Parks, Forrest "Butch" Freeman as Treasurer of Oklahoma County, and the Board of County Commissioners of Oklahoma County. Benton claimed he received title to the property by quit claim deeds filed in 1995 and 2006. Benton's petition alleges that Parks claims title adverse to Benton based on a certificate tax deed executed by Freeman (Treasurer) on May 6, 2009. Benton claimed Treasurer accepted Parks' bid amount of $1,064.27 but that prior to the acceptance of the $1,064.27, "Defendant County wholly failed and neglected to obtain proper service of notice on Benton of the initial tax lien certificate sale held on the Property on October 2, 2006, as required by law." Benton claims, "Said Purported Certificate Tax Deed purports to have been made on May 6, 2009, based on proper service of notice on [Benton] of the Second Tax Sale, which was premised on alleged proper service of notice on [Benton] of the First Tax Sale." He asserts that both sales violated constitutional and statutory requirements and were therefore void. He states that upon the court's direction, he will pay $5,139.68 into court to redeem the property from the tax sale.[1]

¶3 Parks filed an answer and counterclaim which sought to quiet title to the property in Parks.[2] In the course of the litigation, Parks filed a motion for summary judgment in which the following five statements of fact are asserted: On or about October 2, 2006, the property at issue was placed for bid at public auction and purchased by Parks because Benton failed to pay taxes and related charges for 2005. Benton "was served with the Notice of Application of Tax Deed on March 3, 2009." Oklahoma County issued Parks a certificate tax deed which evidenced his purchase of the tax deed for the sum of $1,064.27 representing the taxes, costs, and related charges for the property for 2005. "Parks obtained outright ownership" of the property based on County's issuance of the tax deed. For this reason, according to

---

1. On February 2, 2010, Benton paid $5,333.92 into court as a tender of funds to redeem the property.

2. Treasurer and the Board of County Commissioners also filed an answer but they are not parties to this appeal.

Parks, Benton has no ownership interest in the property.

¶ 4 Attached to Parks' motion were two documents, the Treasurer's certificate tax deed to Parks and a return of service of the notice for application of tax deed completed by a process server. In the return of service in the portion titled "Description of Person Served," the following items were checked: male, black, brown/black hair.

¶ 5 In his response to the motion, Benton disputed Parks' statement of facts and specifically stated he "is not a 'Black Male' and was not served with Notice of Application of Tax Deed on March 3, 2009." Benton included a cross motion for summary judgment in which he asked the court to declare the tax sale void. Benton set forth the following statements of undisputed material facts based primarily on his own affidavit attached to his response:

> Prior to the recording of the certificate tax deed, Benton was the record owner of the property at issue.

> "On and prior to March 3, 2009, Benton resided in the house located on the Property and someone who visited the home, spoke with his neighbors or conducted a reasonable investigation could have determined his whereabouts."

> Benton is not a black male with brown or black hair and he was not served with any notice on March 3, 2009, and that anyone who conducted a reasonable search would have determined he is in fact Caucasian and not a black male.

> No black male with brown or black hair lives on the property or, to Benton's knowledge, was present on the property on or around March 3, 2009, or acts as Benton's lawful designee or agent.

> "Benton never received the Purported notice, no one ever delivered a copy of the same to him prior to the May 13, 2009 letter from Ted Park, LLC, [sic] and he has never received any notice of any application of tax deed regarding the Property or otherwise."

> Benton first discovered that Parks claimed an interest in his property when he re-

ceived a letter from Parks dated May 13, 2009.

> Benton never received prior to October 2, 2006, any notice from County that they intended to sell the property for payment of taxes nor did he receive notice of when or where the sale would take place.

Benton did not receive notice until he received the letter from Parks.

¶ 6 Parks in his reply denied that Benton was the record owner of the property before recordation of the certificate of deed. Parks stated he was without sufficient information regarding who lived on the property in question. Parks admitted Benton is a Caucasian male but denied all statements by Benton that he did not receive notice of the application for tax deed.

¶ 7 Parks submitted the affidavit of process server Barry Goar in which Goar stated he personally served the notice of application for tax deed on Benton and that he made an error when he noted that Benton was a black male. Goar stated that Benton also accepted personal service for the occupant of the property in question, 4505 Lunow Drive, Oklahoma City, Oklahoma. The "substitute" return of service by the process server on the "occupant" correctly listed Benton as a white male.

¶ 8 The trial court granted Benton's motion for summary judgment and denied Parks' motion for summary judgment. The court stated, "Based on the pleadings presented, the arguments made in open court and the relevant case law, the Court finds that the actual notice requirements announced in *Garcia v. Ted Parks, L.L.C.*, 2008 OK 90, 195 P.3d 1269, for both the original sale and the second sale, have not been met and the Deed is void as a matter of law."

¶ 9 Parks appeals.

## STANDARD OF REVIEW

¶ 10 Summary judgment is properly granted "when the pleadings, affidavits, depositions, admissions or other evidentiary materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Davis v. Leitner*, 1989 OK 146, ¶ 9,

782 P.2d 924, 926. When reviewing a grant of summary judgment, we must view all inferences and conclusions to be drawn from the evidentiary materials in a light most favorable to the party opposing the motion. *Id.*

¶ 11 Although a trial court considers factual matters when deciding whether summary judgment is appropriate, its ultimate decision is purely legal: "whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions." *Carmichael v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. Our standard of review is therefore *de novo. Id.*

## ANALYSIS

¶ 12 Title 68 O.S. Supp.2007 § 3105(A) provided that, except for certain situations enumerated in the statute but not applicable here:

The county treasurer shall in all cases ... where taxes are a lien upon real property and are unpaid on the first day of April of any year proceed, as hereinafter provided, to advertise and sell such real estate for such taxes, special assessments and costs, and shall not be bound before so doing to proceed to collect by sale all personal taxes on personal property which are by law made a lien on realty, but shall include such personal tax with that due on the realty, and shall sell the realty for all of the taxes and special assessments.

The Oklahoma Supreme Court held in *Garcia v. Ted Parks, L.L.C.,* 2008 OK 90, ¶ 2, 195 P.3d 1269, 1271, that "due process requires that the landowner be given actual notice of the sale, otherwise the sale is void."

¶ 13 Title 68 O.S.2001 § 3106 provided that the county treasurer was required to "give notice of the sale of real property for delinquent taxes and special assessments by publication of said sale once a week for the two (2) consecutive weeks immediately prior to the third Friday in September preceding the sale, in some newspaper in the county to be designated by the county treasurer." The notice was required to "contain a notification that all lands on which the taxes are delin-

quent and remain due and unpaid will be sold, the time and place of the sale, a list of the lands to be sold, the name or names of the last owner or owners as reflected by the records in the office of the county treasurer, and the amount of taxes due and delinquent." *Id.* The notice was also required to contain the following: "'The sale hereby advertised is conditional and subject to a two-year right of redemption by the record owner as provided in Section 24323 of Title 68 of the Oklahoma Statutes.'" *Id.* Additionally, the county treasurer was required to "give notice by certified mail by mailing to the owner of said real property, as shown by the last tax rolls in his office, a notice of said sale stating the time and place of said sale and showing the legal description of the property of the owner being sold." *Id.* "Failure to receive said notice shall not invalidate said sale." *Id.*

¶ 14 In *Garcia,* the Supreme Court noted the record in that case did "not disclose when or if the landowner was served actual notice that her property was going to be sold by the county assessor[3] on October 6, 2003–the event that triggered [the] dispute." *Garcia,* 2008 OK 90 at ¶ 12, 195 P.3d at 1273. The Court found that "to the extent that the statute implies that failure to give actual notice to a record owner who was living on the property and whose whereabouts were known does not affect the validity of the tax sale, it conflicts with constitutionally protected due process notice requirements." *Id.* at ¶ 15, 195 P.3d at 1273. The Court went on to state, "A constitutionally deficient tax sale is void and ineffective, and failure to comply with the notice requirements deprives the county treasurer of jurisdiction." *Id.*

■ ¶ 15 The Court explained the process of obtaining a tax deed as follows:

When a tax sale is held by the county treasurer, the first person to pay the delinquent taxes in full with accompanying costs is issued a certificate of tax sale. After that sale, the purchaser must wait two years for the record owner to pay the back taxes, interest, and costs. If the owner does not do so within that period, the holder of the certificate can exchange

---

3. Pursuant to 68 O.S. Supp.2007 § 3105, it is the    "county treasurer."

the certificate of tax sale for a deed to the land. Pursuant to 68 O.S. Supp.2002 § 3118, to obtain the deed, the holder of the certificate must serve the record owner with notice of the application for the tax deed. Thereafter, the record owner has 60 days to redeem the property.

*Id.* at ¶ 17, 195 P.3d at 1274 (footnotes omitted).[4] Because compliance with statutes prescribing the manner of service and issuance of a tax deed is mandatory, we "may set aside a tax deed if the certificate holder fails to comply with the statutory notice requirements." *Id.* at ¶ 18, 195 P.3d at 1274–75. "A tax deed issued under defective notice is void." *Id.* at ¶ 18, 195 P.3d at 1275.

■ ¶ 16 The trial court granted Benton's motion for summary judgment and denied Parks' motion for summary judgment because *Garcia*'s actual notice requirements were not met and the tax deed under which Parks claimed ownership was void as a result. After *de novo* review, we conclude that this decision is correct.

¶ 17 There is nothing in the record that establishes that Treasurer complied with the applicable notice requirements before the October 2006 tax sale from which Parks received its certificate of tax sale. The holding in *Garcia* makes clear that an owner is entitled to actual notice of the upcoming sale of his property. Parks asserts Benton did not own the property at the time of the initial sale because First Principal Corp. was the record owner. In its response to Benton's summary judgment motion, Parks presented a record from the Oklahoma County Assessor's office that purported to show that First Principal Corp., not Benton, was the record owner of the property at the time notice of the initial tax sale was given in 2006.[5] This record shows Benton deeded the property to "First Principal Corp." on July 16, 2004, and was not deeded the property back by First Principal Corp. until July 11, 2006. If First Principal Corp. owned the property at the

time of the initial tax sale on October 2, 2006, there is no evidence that Treasurer gave actual notice to First Principal of this sale. If, as mandated by 68 O.S.2001 § 3106, Treasurer gave notice both by publication and by certified mail, there is no showing of compliance with this mandate as to First Principal Corp. as discussed below. If Benton owned the property at the time of the October 2006 sale, and the July 2006 deed seems to indicate he did, there is absolutely no showing of compliance, or even attempted compliance, with the statutory notice of sale mandate as to Benton.[6]

¶ 18 Parks presented no evidence that either Benton or First Principal received actual notice of the October 2006 tax sale. There is no showing that Benton and/or First Principal Corp. could not, with reasonable diligence, be served with the appropriate notice of the sale to be held on October 2, 2006, for delinquent taxes. There is nothing of record showing receipt or refusal of certified mail by either Benton or First Principal Corp.

¶ 19 There is also no showing of compliance with the publication notice requirements of § 3106. Parks claims Treasurer sent a notice of tax sale to First Principal by certified mail. The only document in the record that specifically relates to any certified mailing is a copy of the front of an envelope from Treasurer marked "certified mail" addressed to "1st Principal Corp." That envelope, however, is marked "unclaimed".[7] The mere mailing of a certified letter to First Principal, which Parks asserts is shown by Treasurer's computer office record showing "First Principal Corp." on a list entitled "2006 july [*sic* ] certified," was not enough to meet due process requirements. *Garcia*, 2008 OK 90 at ¶ 13, 195 P.3d at 1273. The fact that the only letter to First Principal in the record was unclaimed further supports the conclusion that actual notice was never accomplished for the October 2006 tax sale.

---

4. 68 O.S. § 3118 was repealed in 2008 after the certificate was issued in this case.

5. Exhibit 1 to Parks' response.

6. When the July 11, 2006, quitclaim deed was executed from First Principal to Benton, Benton executed it as president of First Principal. Ex-

hibit 2 to Benton's response to Parks' motion for summary judgment.

7. This document does not appear to have a date noted on it, and it is not apparent on its face to what notice and time frame it pertains.

¶ 20 Due process requires actual notice of the tax sale. Benton denies receiving notice of the initial tax sale. He states in his affidavit submitted in opposition to Parks' summary judgment motion and in support of his own cross motion that before October 2, 2006, he "never received any notice, written or otherwise, from [Treasurer or Board of County Commissioners] that they intended to sell the Property for payment of taxes or of any date, time or place such sale might take place."

¶ 21 In response to this sworn statement, Parks in its opposition to Benton's cross motion states that it is "without sufficient information to admit or deny the allegations contained in . . . [Benton's] undisputed facts that Benton never received any notice from [Treasurer] that [Treasurer] intended to sell the Property and therefore denies the same."

¶ 22 Parks has wholly failed to show proper notice by certified mail and by publication was given to either Benton or First Principal Corp. Further, there is nothing in the record to show that actual notice was received by either. A mere showing that a certified letter was sent, without offering its date or contents, is not enough. This is particularly true when, as here, it appears that (1) First Principal Corp. owned the property for the relevant period in 2005 for which the taxes became delinquent giving rise to the tax sale and (2) Benton reacquired the property from First Principal in July 2006, an acquisition that preceded the time two weeks immediately before the third Friday in September preceding the sale in which Treasurer is required by § 3106 to give notice by publication of the sale.

¶ 23 The initial tax sale and the resulting issuance of the certificate of tax sale were not valid. There has been no showing that either publication notice or actual notice was properly given and received by either Benton or First Principal that the property was going to be sold for past-due taxes. Because the initial tax sale and its consequent certificate were void for lack of proper notice, Parks was not entitled to exchange the tax certificate for a deed. Answering the question of whether Parks complied with the statutory notice requirements for the application for tax deed in 2009 is not dispositive because proper notice of the sale for delinquent taxes in the first instance in compliance with the law is lacking.

## CONCLUSION

¶ 24 We find no error in the trial court's grant of summary judgment in favor of Benton, and its decision is affirmed. The tax deed in question is cancelled as void and title to the property in question is quieted in Benton. Pursuant to this Opinion and Benton's tender on February 2, 2010, the case is remanded to the trial court for immediate payment by Benton to Treasurer of those funds to which Treasurer is entitled for redemption of the property.

¶ 25 **AFFIRMED AND REMANDED.**

GABBARD, P.J. (sitting by designation), and BARNES, J., concur.