2000 OK 19

**SOUTHWESTERN COMMERCIAL CAPITAL, INC., a Texas corporation, Plaintiff–Appellee,**

v.

**CORNETT PACKING COMPANY, an Oklahoma corporation, Jack W. Cornett, Joan Cornett, Defendants,**

Joe B. Barnes, County Treasurer of Oklahoma County, Oklahoma; and the Board of County Commissioners of Oklahoma County, Oklahoma, Defendants–Appellants.

No. 93,013.

Supreme Court of Oklahoma.

March 14, 2000.

Gretchen Crawford, Assistant District Attorney, Oklahoma City, for Defendants–Appellants.

Steven P. Metheny, Metheny, Mitchell, Davis & Klein, Oklahoma City, for Plaintiff–Appellee.

WATT, J.,

## FACTS AND PROCEDURAL BACKGROUND

¶ 1 The facts giving rise to this appeal are not in dispute. In 1987, defendants, Cornett Packing Company and others, gave a mortgage on certain real property in Oklahoma County to plaintiff, Southwestern Commercial Capital, Inc., which Southwestern then assigned to the Small Business Administration. The Small Business Administration later reassigned the mortgage to Southwestern. The term "mortgagee" is used throughout this opinion to describe whichever mortgagee held the mortgage at the time being discussed.

¶ 2 Cornett failed to pay the ad valorem taxes on the real estate for the years 1989 through 1992 in the amount of $12,511.09 and also failed to pay personal property taxes on its business for those years in the amount of $33,740.02. While both the unpaid real estate taxes and personal property taxes were liens on the mortgaged property, the personal property tax lien was expressly junior and inferior to the Southwestern–Small Business Administration mortgage lien under 68 O.S. 1991 § 3102.[1] Section 3102 provides that personal property tax liens "are superior to all other liens, conveyances or encumbrances *filed subsequent thereto,* on real or personal property." [Emphasis added.] Title 68 O.S. 1991 § 3101 contains the identical provision.

¶ 3 Section 3102 also provides,

... From and after the entry of the tax upon the tax lien docket, any person claiming any interest in any land or personal property can sue the county treasurer and board of county commissioners in the district court to determine the validity or priority of the lien.

The statute, however, does not state when such a suit must be brought.

¶ 4 The Oklahoma County Treasurer took steps to sell the property at a tax sale, in accordance with 68 O.S.1991 § 3105, which provides:

The county treasurer shall in all cases where taxes are a lien upon real property and are unpaid on April 1 of any year proceed, as hereinafter provided, to advertise and sell such real estate for such taxes, special assessments and costs, and shall not be bound before so doing to proceed to collect by sale all personal taxes on personal property which are by this Code

1. Title 68 O.S.1991 § 3102 provides:

Within sixty (60) days after taxes on personal property shall become delinquent as of April 1, the county treasurer shall mail notice to the last-known address of such delinquent taxpayer and cause a general notice to be published one time in some newspaper of general circulation, published in the county, giving the name of each person owing delinquent personal taxes, stating the amount thereof due, and stating that such delinquent personal taxes, if not paid within thirty (30) days from date of this publication, shall be placed on a personal tax lien docket in the office of the county treasurer and the homestead exemption of such taxpayer shall be canceled pursuant to Section 2409.1 of this title. Said liens are superior to all other liens, conveyances or encumbrances filed subsequent thereto, on real or personal property. The tax lien shall be a lien on all real and personal property of the taxpayer in the county for a period of seven (7) years. From and after the entry of such tax upon such tax lien docket, any person claiming any interest in any land or personal property can sue the county treasurer and board of county commissioners in the district court to determine the validity or priority of said lien. [Emphasis added.]

made a lien on realty, but shall include such personal tax with that due on the realty, and shall sell the realty for all of said taxes and special assessments

There were no other bidders at the tax sale and the treasurer bought the property in the name of the county for the amount of the unpaid taxes as authorized by 68 O.S.1991 § 3108, which provides:

The county treasurer is hereby authorized at all tax sales made under the laws of this state, in case there are no other purchasers offering the amount due, to purchase all of any real estate offered at the sale for the amount of taxes, penalty, interest and costs due and unpaid thereon, in the name of the county in which the sale takes place, the county acquiring all the rights both legal and equitable that any other purchaser could acquire by reason of the purchase....

¶ 5 The county treasurer was required by 68 O.S.1991 § 3106 to give notice of the tax sale to the record owner of the property by certified mail. Section 3106 provides:

In addition to said published notice, the county treasurer shall give notice by certified mail by mailing to the owner of said real property, as shown by the last tax rolls in his office, a notice of said sale ...

Section 3106, however, does not require that notice of tax sales be mailed to mortgagees and the county treasurer did not mail notice of the tax sale to the mortgagee.

¶ 6 In June 1993, the county treasurer, under 68 O.S.1991 § 3125, gave notice of his intention to resell the property to which he had earlier acquired title under the tax resale procedures. Section 3125 provides:

The county treasurer shall in all cases where taxes are a lien upon real property and are unpaid on April 1 of any year proceed, as hereinafter provided, to advertise and sell such real estate for such taxes, special assessments and costs, and shall not be bound before so doing to proceed to collect by sale all personal taxes on personal property which are by this Code made a lien on realty, but shall include such personal tax with that due on the realty, and shall sell the realty for all of said taxes and special assessments.

Notice of the resale was given both to the record owner and the mortgagee as required by 68 O.S.1991 § 3127:

The county treasurer shall, at least thirty (30) days prior to such resale of real estate, give notice by certified mail, by mailing to the owner of said real estate, as shown by the last tax rolls in his office, and to all mortgagees of record of said real estate a notice stating the time and place of said resale and showing the legal description of the real property to be sold....

¶ 7 Following its receipt of notice of the 1993 resale, the mortgagee attempted to redeem the property by paying only the real estate taxes due, but not the personal property taxes, because the land records showed that its lien was superior to the county treasurer's personal property tax lien. It is undisputed that the treasurer's personal property tax lien was junior and inferior to the Southwestern–Small Business Administration mortgage and that the county treasurer had not given notice by mail to the mortgagee of the original tax sale. Nevertheless, the county treasurer refused to allow the mortgagee to redeem the property unless the mortgagee paid the personal property taxes, too. Further, the treasurer refused to accept payment in full if the mortgagee tried to pay "under protest." The mortgagee acquiesced and paid the taxes in accordance with the treasurers demands, as failing to do so would have extinguished its mortgage lien on the property.

¶ 8 On June 30 1993 the mortgagee sued Cornett and others to foreclosure its mortgage. In its suit mortgagee included a cause of action against the county treasurer and county commissioners for a refund of the $33,740.02 it had paid the treasurer for the lien for personal taxes on the property. The treasurer relied on 68 O.S.1991 § 3113 to justify its insistence that the mortgagee pay all the taxes for which the property was sold, including the personal property taxes. Section 3113 provides:

... any person having a legal or equitable interest [in the property] may redeem the same from the lien resulting from the tax

sale at any time before the execution of a deed of conveyance therefor by the county treasurer ... by paying the county treasurer the sum for which the property was sold...."

¶ 9 The mortgagee's claim against the Cornetts and the defendants, other than the treasurer and the county commissioners, was reduced to judgment in 1993 and the property was sold at foreclosure sale for an amount less than the Cornetts owed the mortgagee. The 1993 judgment reserved for later determination the mortgagee's claim against the treasurer and county commissioners. None of the issues involving the Cornetts are before us here.

¶ 10 In 1998 the mortgagee moved for summary judgment against the county treasurer and county commissioners on the ground that the undisputed facts showed mortgagee to be entitled to a judgment for a refund of the $33,740.02 it had paid the treasurer for the lien for personal taxes on the property. The trial court granted the mortgagee's motion for summary judgment on April 9, 1999. The county treasurer and county commissioners appealed from the trial court's order granting summary judgment against them under the accelerated procedure provided for in Rule 1.36, Supreme Court rules. The Court of Civil Appeals, Division I reversed the trial court, holding that the county treasurer could require the mortgagee to pay the personal property tax as a precondition to redeeming the property because mortgagee had failed to sue to establish the superiority of its lien under 68 O.S. 1991 § 3102.

### ISSUE

¶ 11 May a county treasurer lawfully deprive a mortgagee of the superiority of its mortgage lien by requiring the mortgagee to satisfy a personal property lien against the mortgaged property that is inferior to the mortgagee's lien in order to avoid extinguishment of the mortgage lien? We answer no.

### DISCUSSION

¶ 12 The county treasurer presents several arguments in support of his view that he was entitled to require the mortgagee to satisfy the personal property tax lien as well as the real estate tax lien and that the mortgagee is not entitled to reimbursement of the amount paid: (1) Title 68 O.S.1991 § 3113 required the county treasurer to collect all taxes, including personal property taxes, before allowing the mortgagee to redeem the property; (2) the mortgagee's failure to establish the superiority of its lien through suit under 68 O.S.1991 § 3102 prior to the original tax sale deprived mortgagee of the superiority of its lien; (3) mortgagee's having received mailed notice of the pending resale prevented the termination of mortgagee's superior lien rights from being a due process violation; (4) mortgagee was guilty of laches for allowing its claim against the county treasure to remain on the docket for five years without action; and (5) Mortgagee was entitled to no relief against the treasurer because mortgagee failed to comply with the Governmental Tort Claims Act. For the reasons discussed below, we reject the county treasurer's contentions and affirm the trial court.

¶ 13 This is a case of first impression. We have not heretofore had occasion to interpret how the statutory tax lien enforcement plan must operate when a county treasurer's lien for unpaid personal property taxes competes with the earlier filed mortgage lien. Title 68 O.S.1991 § 3102 directs the county treasurer to make unpaid personal property taxes a lien on the taxpayer's real property but expressly limits the superiority of the lien established to "liens, conveyances or encumbrances filed subsequent thereto." Consequently, mortgagee's mortgage lien was, as a matter of law, superior to the treasurer's personal property lien, and the treasurer by requiring mortgagee to pay off the personal property lien imposed upon the mortgagee an obligation for which the mortgagee was not legally responsible.

¶ 14 Section 3102 requires the treasurer to mail notice to the delinquent taxpayer notifying him that the unpaid taxes will become a lien on his real and personal property if he does not pay them but requires no notice to be given to mortgagees or other holders of liens against the taxpayer's property. Section 3102 gives a right to any person claiming

an interest in taxpayer's property to "sue the county treasurer and board of county commissioners in the district court to determine the validity and priority of the lien."

¶ 15 The treasurer claims that the mortgagee's failure to sue in the district court, as authorized by § 3102, prior to the original tax sale served to deprive the mortgagor's mortgage lien of its priority over the treasurer's personal property tax lien. We hold that the treasurer's interpretation of § 3102 was erroneous and that he should not have required mortgagee to pay the personal property taxes as a prerequisite to redeeming the property because mortgagee did not receive constitutionally sufficient notice of the imposition of the personal property tax lien.

¶ 16 It is a fundamental tenet of constitutional law that one may not be deprived of a valuable property interest without first giving notice "reasonably calculated under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. . . . It would be idle to pretend that publication alone . . . is a reliable means of acquainting interested parties of the fact that their rights are before the courts." *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 657, 94 L.Ed., 865 (1950). Notice by publication will not bind a party who, like mortgagee here, is readily identifiable.

¶ 17 Mortgagees are entitled to notice by mail of pending tax sales, even if the mortgagee is aware that the mortgagor is in default on his taxes. *Shamblin v. Beasley*, 1998 OK 88, 967 P.2d 1200, citing with approval, *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983). We construe *Shamblin* and *Mennonite* as clearly imposing a duty on taxing authorities to give mailed notice and an opportunity to be heard to a holder of a senior lien before that senior lien may be subordinated to a later filed personal property lien. Anything less would deprive the mortgagee of its constitutionally protected right to due process of law.

¶ 18 To interpret §§ 3113 and 3102 in such a way as to approve the acts of the treasurer

here would be to deprive mortgagee of its due process right to reasonable notice of the loss of the superiority of its mortgage lien *vis a vis* the treasurer's personal property lien. This we decline to do and it is not necessary for us to do so because under our interpretation these statutes pass constitutional muster.

¶ 19 Section 3102 cannot be read to have required the mortgagee to obtain a court order establishing the superiority of its mortgage lien as a prerequisite to asserting that superiority when it sought to redeem the property. Section 3102 does not require that notice by mail be given to the mortgagee of the treasurer's intention to impose a lien for unpaid personal property taxes against the mortgaged property. Similarly, § 3106 did not require that notice of the original tax sale be given to mortgagee. Thus, we interpret § 3102 as having given mortgagee a reasonable time after it was provided legally sufficient notice of the resale within which to establish the superiority lien rights. This is what the mortgagee did when it sought to redeem the property by paying the unpaid real estate taxes.

¶ 20 The superiority of mortgagee's mortgage lien over the treasurer's personal property tax lien is undisputed. Simple fairness demanded that the county treasurer either agree to allow mortgagee to redeem the property by payment of the real estate taxes alone or, at a minimum, to allow payment of the personal property taxes under protest. The county treasurer did neither. By his actions, the county treasurer obtained money from mortgagee that mortgagee was not obliged to pay. This is not the way the statutory plan of creating and satisfying tax liens is designed to operate.

¶ 21 Section 3113 cannot be used by the treasurer as an excuse to collect taxes from mortgagee that mortgagee had no obligation to pay. Section 3113 must be interpreted together with §§ 3102 and 3103, which make earlier filed mortgage liens superior to personal property tax liens. To interpret the language of § 3113, "by paying . . . the sum for which the property was sold," as requiring a senior lien holder to pay off a the treasurer's junior personal property tax lien

would be to interpret § 3113 in an unconstitutional manner. When §§ 3102, 3103, and 3113 are interpreted together it is clear that, despite the language of § 3113, the treasurer may not require a mortgagee to pay a personal property tax lien that is undisputedly junior to the mortgagee's mortgage lien as a precondition to allowing the mortgagee to redeem the property.

¶ 22 We hold that after the treasurer insisted upon collecting the personal property taxes, mortgagee had a statutory right to sue the treasurer and the county commissioners in the district court to the establish the priority of its lien under § 3102 and to seek a refund of the personal property taxes the treasure had wrongfully collected from it. Contrary to the treasurer's argument, mortgagee's right to do so was not extinguished earlier because mortgagee was not given constitutionally sufficient notice of any proceeding prior to the resale. Not until the resale proceedings were instituted was mortgagee given notice by mail. Indeed, it was not legally necessary for mortgagee to act earlier than it did act, as the superiority of its mortgage lien over the treasurer's personal property tax lien was a matter of record.

¶ 23 The county treasurer seeks to distinguish *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) by arguing that the notice of the resale satisfied due process requirements. The county treasurer's argument is flawed, however, because he also claims that mortgagee's failure to obtain a court order under § 3102 deprived mortgagee of the superiority of its mortgage lien. But mortgagee was not given mailed notice of either the § 3102 proceeding or of the original tax sale, conducted under §§ 3105 and 3106. Thus, despite the original tax sale, the superiority of mortgagee's mortgage lien remained intact when mortgagee sought to redeem the mortgaged property by offering to pay the unpaid real estate taxes but not the unpaid personal property taxes.

■ ¶ 24 The treasurer also argues that mortgagee's failure to pay the taxes under protest and to follow the procedures set out in 68 O.S.1991 § 2884 prohibit mortgagee from asserting the superiority of its lien. We disagree. Section 2884 deals with taxes

that are paid when due. Obviously, § 2884 does not apply to this appeal. Mortgagee sought first to avoid payment of the personal property taxes because its lien was superior to the treasurer's lien. Only after the treasurer insisted on payment of the personal property taxes, which mortgagee was not obliged to pay, did mortgagee seek to pay them under protest. But the treasurer refused to accept mortgagee's check if it contained the statement that payment was under protest. The treasurer will not be heard to complain about the method the mortgagee chose to establish the superiority of its lien and to seek reimbursement of the moneys it was wrongly required to pay to the treasurer where the treasurer both insisted on payment of funds to which it was not entitled and failed to allow such payment to be made under protest.

■ ¶ 25 The county treasurer claims that mortgagee was guilty of laches, relying on *Deep Fork Const. Co. v. Board of Tax Roll Corrections*, 1964 OK 62, 391 P.2d 810. In *Deep Fork*, plaintiff, the lessee of construction equipment, had received notice by mail of the assessment of taxes against the equipment but had taken no steps to assert its position until more than a year later. Here, mortgagee redeemed the property within a matter of days after receiving notice of the resale and brought suit shortly after it redeemed the property. Thus, *Deep Fork* does not support the treasurer's position.

■ ¶ 26 The treasurer contends that, although mortgagee's suit was pending, mortgagee's failure to file its motion for summary judgment for several years after its claims against the Cornetts had been resolved also constitutes laches. We reject this contention for two reasons. First, the treasurer has shown no prejudice resulting from the delay—it has been in possession of mortgagee's money during the interim. Second, the treasurer was a party to the action and could have sought resolution of mortgagee's claim against him at an earlier time had he desired to do so. Not having done so, the treasurer will not be heard to complain of mortgagee's failure to move more quickly.

■ ¶ 27 Finally, the county treasurer contends that mortgagee has no right to prosecute its claims against him because

mortgagee failed to comply with the Governmental Tort Claims Act, 51 O.S.1991 §§ 151, et seq. The treasurer asserts that mortgagee's action is governed by the Act because the mortgagee alleged that the treasurer "wrongfully and unlawfully required and coerced" the payment of the taxes. The treasurer does not cite any authority for this position other than the Act itself. We reject the treasurer's contention because it is clear that mortgagee's action was a suit to establish the priority of its lien under § 3102 and for the refund of taxes, which mortgagee correctly asserted the county treasurer had wrongfully required mortgagee to pay. We hold that mortgagee's suit against the county treasurer was not based on a tort claim but instead was a suit authorized by statute, 68 O.S.1991 § 3102. Mortgagee, therefore, had no obligation to comply with the terms of the Governmental Tort Claims Act.

CERTIORARI PREVIOUSLY GRANTED, COURT OF CIVIL APPEALS OPINION VACATED, JUDGMENT OF THE TRIAL COURT AFFIRMED.

. SUMMERS, C.J., HARGRAVE, V.C.J., HODGES, LAVENDER, KAUGER, BOUDREAU, and WINCHESTER, JJ., concur.

OPALA, J., concurs in judgment.