OSCN Found Document:CROWNOVER v. KEEL

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 CROWNOVER v. KEEL
2015 OK 35
Case Number: 112728
Decided: 05/26/2015
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2015 OK 35, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL 
RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 
 


 


VERNON L. CROWNOVER, Plaintiff/Appellant,
v.
GARLAND KEEL, 
COUNTY TREASURER OF McINTOSH COUNTY and BOARD OF COUNTY COMMISSIONERS OF 
McINTOSH COUNTY, Defendants/Appellees.

ON CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION 
III

¶0 Appellant landowner neglected to pay taxes on certain real property in 
McIntosh County, Oklahoma. The property was sold at a tax sale and a tax deed 
was issued to the buyer. The landowner filed suit seeking to invalidate the tax 
deed and quiet title in himself, asserting that the sale and resultant deed were 
void because he was not given constitutionally sufficient notice of the sale and 
was denied his right to redeem the property. Both the landowner and the county 
defendants moved for summary judgment. The trial court granted the county 
defendants' motion and denied the landowners. The landowner appealed, and the 
Court of Civil Appeals affirmed. We hold: 1) that the landowner did not receive 
constitutionally sufficient notice; and 2) the sale and resultant tax deed are 
therefore void.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF 
CIVIL APPEALS VACATED; TRIAL COURT REVERSED AND 
CAUSE
REMANDED.

Michael P. Brogan, Oklahoma City, Oklahoma, for Plaintiff/Appellant Vernon L. 
Crownover.
Carman D. Rainbolt, Checotah, Oklahoma, for Defendant/Appellee 
Garland Keel.
Gregory R. Stidham, Assistant District Attorney for McIntosh 
County, Eufaula, Oklahoma, for Defendants/Appellees County Treasurer of McIntosh 
County and Board of County Commissioners of McIntosh County.

COMBS, V.C.J.:
¶1 The question presented on appeal is whether an owner of real property 
received constitutionally sufficient notice of the sale of his property for 
delinquent taxes when notice was provided only by publication and certified mail 
that was returned undelivered. We hold that he did not.
I.
FACTS AND PROCEDURAL HISTORY
¶2 At issue in this cause is the ownership of certain real property in 
McIntosh County, Oklahoma. Plaintiff/Appellant Vernon L. Crownover (Crownover) 
originally obtained title to this property by virtue of warranty deed recorded 
in the McIntosh County Clerk's Office on May 18, 2001. The undisputed facts 
indicate Crownover ceased paying taxes on this property after paying the 2005 ad 
valorem taxes by check dated January 1, 2006.
¶3 After Crownover failed to pay taxes on the property for several years, the 
property was offered by McIntosh County for sale during the 2010 resale, 
pursuant to 68 O.S. 2011 §§ 3105 
and 3125. It is undisputed that the notice provisions of 68 O.S. 2011 § 3106, mandating 
notice by mail and publication, were complied with. Notice was sent by certified 
mail to Crownover at the address he provided when he purchased the property in 
McIntosh County, and was also published in a newspaper in McIntosh County. 
Unbeknownst to county treasurer's office, Crownover no longer lived at the 
address to which notice was sent.
¶4 Defendant/Appellee Garland Keel (Keel) purchased the property at the 2010 
tax resale and received a resale tax deed. Keel contacted Crownover after 
obtaining the resale tax deed to inquire about a boat and trailer Crownover had 
left on the property. Apparently only at this point did Crownover become aware 
that the property had been sold at the tax resale due to his failure to pay 
delinquent taxes.[1]
¶5 Crownover filed suit against Defendants/Appellees County Treasurer of 
McIntosh County and Board of County Commissioners of McIntosh County 
(collectively, "County") in the District Court of McIntosh County on August 12, 
2010, alleging he was the true owner of the subject property and seeking to 
quiet title in himself. Crownover alleged that Keel's resale tax deed was void 
because Crownover received no actual notice of the delinquent taxes or the tax 
resale. Crownover argued that he did not receive notice because while the 
notices of delinquent taxes and of the resale were sent to the address he 
provided to McIntosh County when he purchased the property, Crownover no longer 
lived at that address. Crownover asserted that the County should have sent 
notice to the address listed on the last check he wrote for taxes on January 1, 
2006. Crownover asserted that had notice been mailed to his correct address and 
had he received it, he would have immediately paid taxes on the property and 
would have redeemed it from the tax resale. Accordingly, he claimed he was 
denied his right to redemption by the County's failure to provide him with 
notice.
¶6 On June 4, 2013, Crownover moved for summary judgment, alleging that there 
was no dispute as to the material facts and that he was denied due process 
because he did not have actual notice of the delinquent taxes and 2010 tax 
resale, and that the County's efforts were insufficient to provide him with that 
notice. The County responded to Crownover's motion for summary judgment on 
August 20, 2013, and also moved for summary judgment, alleging that it complied 
with all statutory notice requirements by: 1) mailing notice by certified mail 
to the address Crownover had originally provided; and 2) publishing notice of 
the resale in a publication in McIntosh County. The County asserted the burden 
was on Crownover to provide notice that his address had changed, and that it 
should not have been required to assume that a single check with a different 
address constituted that notice.[2]
¶7 In a response to County's motion for summary judgment filed on September 
6, 2013, Crownover contended that the notice sent by the County to his old 
address via certified mail was returned to the County treasurer marked "Not 
Deliverable as Addressed Unable to Forward."[3] In two separate orders filed on March 
11, 2014, the trial court overruled Crownover's motion for summary judgment and 
granted summary judgment in favor of the County.
¶8 Crownover appealed, filing his Petition in Error and Preliminary Statement 
on April 7, 2014, in accordance with Oklahoma Supreme Court Rule 1.36, 12 O.S. 
Supp. 2013, Ch. 15, App. 1, governing accelerated procedure for summary 
judgments. This Court issued a show cause order on April 9, 2014, directing 
Crownover to show cause why his appeal should not be dismissed for lack of an 
appealable order because the trial court's order granting summary judgment for 
the County did not dispose of Crownover's claims against Keel. Crownover 
responded to the show cause order on April 23, 2014, and asserted that adequacy 
of notice was the controlling issue in determining the validity of Keel's tax 
deed. Because adequacy of notice to Crownover would determine the validity of 
the tax deed issued to Keel, Crownover asserted the trial court's order denying 
his motion for summary judgment was a final order disposing of his claims 
against all parties, including Keel. This Court agreed, and allowed Crownover's 
appeal to proceed.
¶9 In an unpublished opinion issued on December 5, 2014, the Court of Civil 
Appeals , Division III, affirmed the decision of the trial court. The COCA 
determined that the County completed all the statutory requirements to vest in 
the County treasurer the authority to issue the tax deed, including mailing 
notice to Crownover's address of record. The COCA also noted that pursuant to 68 O.S. 2011 § 3106, Crownover's 
failure to receive this notice did not invalidate the sale.[4] Further, the COCA stated that 
although Crownover claimed the County Treasurer's records showed the envelope 
sent to his previous address was marked "not deliverable as addressed unable to 
forward," Crownover did not attach a copy of the envelope and therefore it was 
not part of the record.
¶10 Crownover filed his Petition for Writ of Certiorari on December 26, 2014, 
arguing that the COCA erred by incorrectly stating that Crownover failed to 
attach a copy of the certified mail envelope marked "not deliverable as 
addressed unable to forward." Crownover further asserts that under the 
undisputed facts he was entitled to summary judgment as notice via certified 
mail was insufficient to satisfy due process when the County was aware that he 
did not receive that notice. He also argues that a simple inquiry on their part 
would have allowed them to determine his current address and provide actual 
notice, which they failed to do. This Court granted Crownover's Petition for 
Certiorari on March 30, 2015, and the cause was assigned to this office on April 
1, 2015.
II.
STANDARD OF REVIEW
¶11 A moving party is entitled to summary judgment as a matter of law only 
when the pleadings, affidavits, depositions, admissions, or other evidentiary 
materials establish that no genuine issue of material fact exists. Miller v. 
David Grace, 2009 OK 49, 
¶10, 212 P.3d 1223; Davis v. 
Leitner, 1989 OK 146, ¶9, 782 P.2d 924. In reviewing the grant 
or denial of summary judgment, this Court views all inferences and conclusions 
to be drawn from the evidentiary materials in a light most favorable to the 
nonmoving party. Trinity Baptist Church v. Brotherhood Mut. Ins. Services, 
LLC, 2014 OK 106, ¶9, 341 
P.3d 75; Miller, 2009 OK 
49, ¶10; Wathor v. Mut. Ins. Adm'rs, 2004 OK 2, ¶4, 87 P.3d 559.
¶12 Because a grant of summary judgment is a purely legal issue, this Court's 
standard of review on appeal is de novo. Trinity, 2014 OK 106, ¶9; Miller, 2009 OK 49, ¶10; Carmichael v. 
Beller, 1996 OK 48, ¶2, 914 P.2d 1051. In conducting a de 
novo review of a trial court's legal rulings, this Court possesses plenary, 
independent, and non-deferential authority to examine the issues presented. 
Sheffer v. Carolina Forge Co., L.L.C., 2013 OK 48, ¶10, 306 P.3d 544; Martin v. Aramark 
Servs., Inc., 2004 OK 38, 
¶4, 92 P.3d 96.
III.
NOTICE TO A PROPERTY OWNER VIA CERTIFIED MAIL 
PRIOR TO SALE OF THE PROPERTY FOR DELINQUENT TAXES 
IS
INSUFFICIENT TO SATISFY THE REQUIREMENTS OF DUE 
PROCESS
WHEN THAT NOTICE IS RETURNED UNDELIVERED.
¶13 The Oklahoma Statutes provide for the eventual sale of real property by 
the county in which it is located if taxes remain unpaid for a long enough 
period of time. The applicable statute authorizing the sale of real property for 
delinquent taxes is 68 O.S. 2011§ 
3105, which provides in pertinent part:

 
 A. The county treasurer shall in all cases, except those provided for in 
 subsection B of this section, where taxes are a lien upon real property and 
 have been unpaid for a period of three (3) years or more as of the date such 
 taxes first became due and payable, advertise and sell such real estate for 
 such taxes and all other delinquent taxes, special assessments and costs at 
 the tax resale provided for in Section 3125 of this title, which shall be 
 held on the second Monday of June each year in each county. The county 
 treasurer shall not be bound before so doing to proceed to collect by sale 
 all personal taxes on personal property which are by law made a lien on 
 realty, but shall include such personal tax with that due on the realty, and 
 shall sell the realty for all of the taxes and special 
 assessments.
A. Constitutionally adequate notice to an owner of real property is 
required before that property can be sold for delinquent taxes.
¶14 While 68 O.S. 2011 § 3105 
authorizes the sale of real property for delinquent taxes, the U.S. Const. 
amend. XIV, § 1 and Okla. Const. Art. 2, § 7 ensure that no person may be 
deprived of life, liberty, or property without due process of law.[5] At a minimum, 
due process requires notice and a meaningful opportunity to appear and be heard. 
Edwards v. City of Sallisaw, 2014 OK 86, ¶19, 339 P.3d 870; 
Daffin v. State ex rel. Okla. Dep't of Mines, 2011 OK 22, ¶16, 251 P.3d 741.
¶15 Accordingly, constitutionally sufficient notice must be given to real 
property owners before the property is sold for failure to pay taxes. Jones 
v. Flowers, 547 U.S. 220, 234, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006) 
("[B]efore forcing a citizen to satisfy his debt by forfeiting his property, due 
process requires the government to provide adequate notice of the impending 
taking."). See Southwestern Commercial Capital, Inc. v. Cornett Packing 
Co., 2000 OK 19, ¶16, 997 P.2d 849; Luster v. Bank of 
Chelsea, 1986 OK 74, ¶18, 730 P.2d 506.
¶16 Notice to the property owner prior to selling real property for 
delinquent taxation is also required by statute, and the requirements are set 
out in 68 O.S. 2011 § 3106, which 
provides:

 
 The county treasurer, according to the law, shall give notice of 
 delinquent taxes and special assessments by publication once a week for two 
 (2) consecutive weeks at any time after April 1, but prior to the end of 
 September following the year the taxes were first due and payable, in some 
 newspaper in the county to be designated by the county treasurer. 
 Such notice shall contain a notification that all lands on which the 
 taxes are delinquent and remain due and unpaid will be sold in accordance 
 with Section 3105 of this title, a list of the lands to be sold, the name or 
 names of the last record owner or owners as of the preceding December 31 or 
 later as reflected by the records in the office of the county assessor, 
 which records shall be updated based on real property conveyed after October 
 1 each year and the amount of taxes due and delinquent. If the sale involves 
 property upon which is located a manufactured home the notice shall contain 
 the following language: "The sale hereby advertised involves a manufactured 
 home which may be subject to the right of a secured party to repossess. A 
 holder of a perfected security interest in such manufactured home may be 
 able to pay ad valorem taxes based upon the value of the manufactured home 
 apart from the value of real property." In addition to said published 
 notice, the county treasurer shall give notice by mailing to the record 
 owner of said real property as of the preceding December 31 or later as 
 reflected by the records in the office of the county assessor, which records 
 shall be updated based on real property conveyed after October 1 each year, 
 a notice stating the amount of delinquent taxes owed and informing the owner 
 that the subject real property will be sold as provided for in Section 3105 
 of this title if the delinquent taxes are not paid and showing the legal 
 description of the property of the owner being sold. Failure to receive said 
 notice shall not invalidate said sale. The county treasurer shall charge and 
 collect in cash, cashier's check or money order, in addition to the taxes, 
 interest and penalty, the publication fees as provided by the provisions of 
 Section 121 of Title 28 of the Oklahoma Statutes, and Five Dollars ($5.00) 
 plus postage for mailing the notice, which shall be paid into the county 
 treasury or whatever fund the publication and mailing fee expenses came 
 from, and the county shall pay the cost of the publication of such notice. 
 But in no case shall the county be liable for more than the amount charged 
 to the delinquent lands for advertising and the cost of 
 mailing.
¶17 The parties do not dispute that the County satisfied the requirements of 
68 O.S. 2011 § 3106 by publishing 
notice in a newspaper in McIntosh county and sending notice by certified mail to 
the address Crownover had originally provided. The County asserts that its 
compliance with the statute was sufficient to satisfy the requirements of due 
process, even if Crownover did not receive actual notice. The County points 
specifically to the portion of 68 
O.S. 2011 § 3106 which states: "[f]ailure to receive said notice shall not 
invalidate said sale." Crownover asserts that mere compliance with the statute 
was insufficient to satisfy due process where the County knew that Crownover did 
not have actual notice, because the certified envelope was returned marked as 
undeliverable as addressed and unable to forward.
¶18 This Court has long recognized that the statutory notice provisions for a 
tax sale are mandatory, and the absence of such notice nullifies the sale of the 
property. Garcia v. Ted Parks, L.L.C., 2008 OK 90, ¶13, 195 P.3d 1269; Smith v. 
Bostaph, 1924 OK 937, ¶0, 229 P. 1039 (overruled on other 
grounds by Wilson v. Levy et al., 1929 OK 457, 282 P. 679). However, compliance 
with the notice provisions 68 O.S. 
2011 § 3106 is not in and of itself sufficient if the notice provided is 
constitutionally deficient:

 
 when notice is a person's due, process which is a mere gesture is not due 
 process. The means employed must be such as one desirous of actually 
 informing the absentee might reasonably adopt to accomplish it. The 
 reasonableness and hence the constitutional validity of any chosen method 
 may be defended on the ground that it is in itself reasonably certain to 
 inform those affected
Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315, 70 
S.Ct. 652, 94 L.Ed. 865 (1950).
B. Notice via certified mail does not satisfy the requirements of due 
process when it is returned undelivered and other reasonable steps can be taken 
to supply notice.
¶19 The notice requirement of due process is not satisfied where, as here, 
notice sent via certified mail is returned undelivered and no further action is 
taken. The decision of the United States Supreme Court in Jones v. 
Flowers, 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006), is directly 
on point concerning notice required to satisfy the requirements of due process 
prior to sale of real property for delinquent taxation. In Jones, under 
similar facts to this cause, the Supreme Court of the United States determined 
that "when mailed notice of a tax sale is returned unclaimed, the State must 
take additional reasonable steps to attempt to provide notice to the property 
owner before selling his property, if it is practicable to do so." Jones, 
547 U.S. at 225. The tax sale in Jones occurred after the State published 
notice in a newspaper and attempted to notify the property owner--who no longer 
lived on the property--by certified mail twice, with the notice returned 
unclaimed both times. Jones, 547 U.S. at 223-224.
¶20 The Jones Court reaffirmed that the due process clause of the 
United States Constitution does not require that a property owner receive actual 
notice before the government may take his property. 547 U.S. at 226; 
Dusenberry v. United States, 534 U.S. 161, 170, 122 S.Ct. 694, 151 
L.Ed.2d 597 (2002). However, the Court also noted that:

 
 due process requires the government to provide "notice reasonably 
 calculated, under all the circumstances, to apprise interested parties of 
 the pendency of the action and afford them an opportunity to present their 
 objections."
 ..
 In Mullane we stated that "when notice is a person's due ... [t]he 
 means employed must be such as one desirous of actually informing the 
 absentee might reasonably adopt to accomplish it".
Jones, 547 U.S. at 226, 229 (quoting Mullane v. Central Bank & 
Trust Co., 339 U.S. 306, 314-315, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).
In Jones, much as in this cause, the State argued that it satisfied 
the notice requirement of due process through the act of sending notice via 
certified mail. The Court disagreed, holding:

 
 We do not think that a person who actually desired to inform a real 
 property owner of an impending tax sale of a house he owns would do nothing 
 when a certified letter sent to the owner is returned unclaimed. If the 
 Commissioner prepared a stack of letters to mail to delinquent taxpayers, 
 handed them to the postman, and then watched as the departing postman 
 accidentally dropped the letters down a storm drain, one would certainly 
 expect the Commissioner's office to prepare a new stack of letters and send 
 them again. No one "desirous of actually informing" the owners would simply 
 shrug his shoulders as the letters disappeared and say "I tried." Failure to 
 follow up would be unreasonable, despite the fact that the letters were 
 reasonably calculated to reach their intended recipients when delivered to 
 the postman.
Jones, 547 U.S. at 229 (emphasis added).
The Jones court also stated succinctly that the property owner's 
failure to keep his address updated, which was required by statute, did not 
result in the owner somehow forfeiting his right to constitutionally 
sufficient notice. 547 U.S. at 229. Further, "the common knowledge that property 
may become subject to government taking when taxes are not paid does not excuse 
the government from complying with its constitutional obligation of notice 
before taking private property." 547 U.S. at 232.
¶21 While the Jones Court determined that the State should have taken 
other reasonable measures to reach the property owner, it stopped short of 
requiring the state to search elsewhere for an address for the property owner, 
noting that an open-ended search for a new address would unduly burden the 
State. 547 U.S. at 236. Rather, the Court suggested reasonable measures such as 
posting notice on the property door, or even sending notice by regular mail, 
which could at least have resulted in its delivery and presence on the property. 
Jones, 547 U.S. at 235. The Court noted that it was not its 
responsibility to redraft the State's notice statute, but it was sufficient that 
the Court was confident additional reasonable steps were available for Arkansas 
to employ before taking the property. Jones, 547 U.S. at 238. The Court 
concluded:

 
 There is no reason to suppose that the State will ever be less than fully 
 zealous in its efforts to secure the tax revenue it needs. The same cannot 
 be said for the State's efforts to ensure that its citizens receive proper 
 notice before the State takes action against them. In this case, the State 
 is exerting extraordinary power against a property owner-taking and selling 
 a house he owns. It is not too much to insist that the State do a bit more 
 to attempt to let him know about it when the notice letter addressed to him 
 is returned unclaimed.
Jones, 547 U.S. at 239.
¶22 Federal jurisprudence is not the only indication that notice via 
certified mail is insufficient to satisfy the requirements of due process before 
a sale of real property for delinquent taxation when the government is aware 
that the notice was not received by the property owner. Prior decisions of this 
Court also firmly indicate that the County was required to do more under these 
circumstances than simply shrug and claim it complied with the notice 
statute.
¶23 As stated previously, this Court has long recognized that the statutory 
notice provisions for a tax sale are mandatory, and the absence of such notice 
nullifies the sale of the property. Garcia, 2008 OK 90, ¶13, 195 P.3d 1269. This Court has also 
previously determined that notice by publication alone is insufficient to 
satisfy the requirements of due process when the party entitled to notice is 
readily identifiable. Garcia, 2008 OK 90, ¶13; Southwestern 
Commercial Capital, Inc. v. Cornett Packing Co., 2000 OK 19, ¶16, 997 P.2d 849.
¶24 This cause is not the first time this Court has examined notice 
requirements prior to the sale of real property for delinquent taxes through the 
lens of constitutionally-required due process. In Luster v. Bank of 
Chelsea, 1986 OK 74, ¶18, 730 P.2d 506, this Court held that a 
tax resale deed was void where the county treasurer failed to provide the 
statutorily-required[6] notice to the true owner of the real property, 
because the tax rolls erroneously showed another individual as the owner. Noting 
that simple compliance with the notice requirements of the statute might not 
satisfy due process, this Court stated:

 
 [a]lthough the Lusters argue the trial court correctly found that all 
 matters pertaining to the tax certificates and the sale at the tax resale 
 were in compliance with the statutes, this is not determinative of this 
 appeal. It is the totality of the circumstances and conditions of each 
 individual case that determines if the constitutional requirements of due 
 process are satisfied. Walker v. City of Hutchinson, 352 U.S. 112, 115, 
 77 S.Ct. 200, 202, 1 L.Ed.2d 178 (1956); Mullane, 339 U.S. at 314, 70 S.Ct. 
 at 657. Due to no fault of Mrs. Thomas, the County Treasurer did not mail 
 written notice of either the original sale or the resale of the property to 
 her because the tax rolls erroneously reflected another person as record 
 owner. The publication advertising the resale similarly named Mr. Vaughn as 
 the owner rather than the Thomases. Concededly, the published notice of the 
 original sale listed Mr. Thomas as the owner.
Luster, 1986 OK 74, ¶17 
(emphasis added).
¶25 In Wells Fargo Credit Corp. v. Ziegler, 1989 OK 113, ¶6, 780 P.2d 703, this Court determined 
that the mere act of sending notice via certified mail, in the absence of a 
return receipt, was insufficient to constitute actual notice.[7] In Ziegler, the 
holders of the tax deed argued, much as the County does here, that pursuant to 
the statute sending notice via certified mail was sufficient regardless of 
whether the mailed notice was received. This Court disagreed, holding:

 
 [t]his is a too narrow construction. The statute requires the county 
 treasurer to exercise reasonable diligence in locating the mortgagee. 
 Furthermore, "prior to an action which will affect an interest in life, 
 liberty or property protected by the Due Process Clause of the Fourteenth 
 Amendment, a state must provide notice reasonably calculated, under all the 
 circumstances, to apprise interested parties of the pendency of the action 
 and afford them an opportunity to present their objections." Mennonite Bd. 
 of Missions v. Adams, 462 U.S. 791, 795, 103 S.Ct. 2706, 2709, 77 L.Ed.2d 
 180, 185 (1983) citing Mullane v. Central Hanover Bank & Trust Co., 339 
 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), "The notice must be 
 of such nature as reasonably to convey the required information . . . ." 
 Mullane, 339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873. The notice as 
 given in this case neither comports with the statutory mandate of reasonable 
 diligence in locating the mortgagee nor with the constitutional requirement 
 of due process. The absence of a return receipt was a red flag alerting the 
 County Treasurer to exercise reasonable diligence in locating Wells Fargo. 
 Yet, the County Treasurer went no further in its attempt to provide notice 
 in this case. The act of mailing, in and of itself, does not constitute 
 actual notice. "Notice by mail or other means as certain to ensure actual 
 notice is a minimum constitutional precondition to a proceeding which will 
 adversely affect the liberty or property interests of any party. . . ." 
 Mennonite Bd. of Missions, 103 S.Ct. at 2712. In the instant case, the act 
 of mailing without proof of receipt of notice falls short of the exercise of 
 reasonable diligence in assuring actual notice.
Ziegler, 1989 OK 113, 
¶6.
¶26 More recently, this Court examined required notice in Garcia v. Ted 
Parks, L.L.C., 2008 OK 90, 
195 P.3d 1269. Under the facts 
of that cause, where the record owner was living on the property and her 
whereabouts were known, this Court determined that nothing less than actual 
notice was sufficient to meet the requirements of due process prior to sale of 
the property for delinquent taxation. This Court declared:

 
 [c]learly, to the extent that the statute implies that the failure to 
 give actual notice to a record owner who was living on the property and 
 whose whereabouts were known does not affect the validity of the tax sale, 
 it conflicts with constitutionally protected due process notice 
 requirements.
Garcia, 2008 OK 90, 
¶15.
C. Under the facts of this case, Crownover did not receive 
constitutionally adequate notice of the pending sale of his property for 
delinquent taxes.
¶27 It is undisputed that Crownover failed to timely pay taxes on the subject 
property. It is also undisputed that the County fulfilled the notice 
requirements of 68 O.S. 2011 § 
3106 by publishing notice and by sending notice via certified mail to the 
address it had been given for Crownover. The County asserts this was sufficient 
notice, regardless of whether the notice was actually received by Crownover, and 
further cites Crownover's own need to notify them of an address change and his 
presumed knowledge that he would owe taxes.
¶28 However, the record contains undisputed evidence that the notice to 
Crownover sent via certified mail was never received by him, was in fact 
returned to the County marked as "not deliverable as addressed unable to 
forward." The Court of Civil Appeals erred by declaring that this envelope was 
mentioned but not actually attached to the record. Pursuant to Jones, 
when confronted with the knowledge that its notice via certified mail was not 
delivered and therefore not seen by Crownover, the County was required to 
attempt some other reasonable method of supplying notice to Crownover. 547 U.S. 
at 225. The Prior decisions of this Court also indicate that simple compliance 
with the notice statute is not always enough to satisfy the requirements of due 
process. See Garcia, 2008 OK 
90, ¶15; Ziegler, 1989 OK 
113, ¶6.
¶29 The County could have taken other reasonable steps to attempt to provide 
Crownover with notice, without necessarily being obligated to conduct a lengthy 
hunt for a correct address. See Jones, 547 U.S. at 235-36. Like the 
Supreme Court of the United States, we do not think that a person who actually 
desired to inform a real property owner of an impending tax sale of the real 
property would do nothing when a certified letter sent to the owner is returned 
unclaimed. Jones, 547 U.S. at 229. The return of the certified notice 
undelivered was a red flag that should have tipped off the County it needed to 
follow up. Ziegler, 1989 OK 
113, ¶6. The County's failure to make any further effort resulted in 
Crownover being denied constitutionally sufficient notice of the eminent sale of 
his property.
¶30 The Jones decision also deals succinctly, from the standpoint of 
U.S. Const. amend. XIV, § 1, with the County's claims concerning Crownover's 
obligations. Crownover's failure to timely pay taxes and his failure to provide 
an updated address to the County did not relieve it of its obligation to provide 
him with constitutionally adequate notice prior to selling his property. 
Jones, 547 U.S. at 229, 232. We agree.
CONCLUSION
¶31 Under the undisputed facts of this cause, Crownover was not provided with 
constitutionally adequate notice prior to the sale of his property for 
delinquent taxes. Jones, 547 U.S. at 225. See Ziegler, 1989 OK 113, ¶6; Luster, 1986 OK 74, ¶18. Accordingly, the 
tax sale and resultant resale tax deed are void. Garcia, 2008 OK 90, ¶15; Ziegler, 1989 OK 113, ¶6; Luster, 1986 OK 74, ¶¶18-19. Summary 
judgment in favor of the County was improper. The opinion of the Court of Civil 
Appeals is vacated, the trial court's order granting summary judgment in favor 
of the County is reversed, and this cause is remanded to the trial court for 
further proceedings consistent with this opinion.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF 
CIVIL APPEALS VACATED; TRIAL COURT REVERSED AND 
CAUSE
REMANDED.

REIF, C.J., COMBS, V.C.J., KAUGER, WATT, EDMONDSON, COLBERT, and GURICH, JJ., 
concur.

WINCHESTER (by separate writing) and TAYLOR, JJ., dissent.

FOOTNOTES

[1] In his 
Response to Petition in Error, Keel alleges he contacted Crownover to inquire 
about purchasing the boat and trailer. In his response to Crownover's petition 
in error, Keel notes he looked for a phone number for Crownover. The fact that 
Keel apparently found one without undue difficulty supports Crownover's 
assertion that finding him was not exactly an insurmountable obstacle, even 
after he moved.
When the parties eventually spoke, Keel alleges they 
instead reached an agreement wherein Crownover would rent the property from Keel 
at a monthly rate in order to store the boat and trailer. Keel asserts Crownover 
paid him rent once by check, in the amount of $150.00, for the months of August 
and September, 2010, and that he received no further payment from Crownover 
after that point.

[2] County 
also asserted that the name on the last check Crownover tendered was Vernon L. 
Crownover, TTEE, whereas the property was clearly held in the name of Vernon L. 
Crownover. The County asserted in its response and motion for summary judgment 
that it had no way of knowing that the name and address on the check was a 
proper contact point for Vernon L. Crownover, the individual.

[3] 
Crownover attached a copy of the envelope to his response as exhibit A, and that 
exhibit is included in the record on appeal.

[4] The 
COCA opinion actually cites 68 O.S. 
2011 § 3601, which is an error as that provision is unrelated to the instant 
cause. Title 68 O.S. 2011 § 3106, 
the relevant provision, provides in pertinent part:
.. the county treasurer shall give notice by mailing to the record owner of 
said real property as of the preceding December 31 or later as reflected by the 
records in the office of the county assessor, which records shall be updated 
based on real property conveyed after October 1 each year, a notice stating the 
amount of delinquent taxes owed and informing the owner that the subject real 
property will be sold as provided for in Section 3105 of this title if the 
delinquent taxes are not paid and showing the legal description of the property 
of the owner being sold. Failure to receive said notice shall not invalidate 
said sale.
Title 68 O.S. 2011 § 3106 
(emphasis added).

[5] U.S. 
Const. amend. XIV, § 1 provides:
[a]ll persons born or naturalized in the United States, and subject to the 
jurisdiction thereof, are citizens of the United States and of the state wherein 
they reside. No state shall make or enforce any law which shall abridge the 
privileges or immunities of citizens of the United States; nor shall any state 
deprive any person of life, liberty, or property, without due process of law; 
nor deny to any person within its jurisdiction the equal protection of the 
laws.
Okla. Const. Art. 2, § 7 provides:
[n]o person shall be deprived of life, liberty, or property, without due 
process of law.
Oklahoma's due process clause has a definitional sweep that is coextensive 
with its federal counterpart. In Re Adoption of K.P.M.A., 2014 OK 85, n. 3, 341 P.3d 38; 
Gladstone v. Bartlesville Indep. School Dist. No. 30, 2003 OK 30, n. 16, 66 P.3d 442; Fair School Finance 
Council of Oklahoma, Inc. v. State, 1987 OK 114, n. 48, 746 P.2d 1135. However, this Court's 
holdings with regard to state constitutional questions are based on Oklahoma 
law, which provides bona fide, separate, adequate and independent grounds 
for our decision. In Re Adoption of K.P.M.A., n. 3; Daffin v. State ex 
rel. Oklahoma Dept. of Mines, 2011 OK 22, n. 21, 251 p.3d 741; Gaylord 
Entertainment Co. v. Thompson, 1998 OK 30, ¶51, 958 P.2d 128.

[6] The 
notice provision at issue in this cause was 68 O.S. Supp. 1984 § 24312; a prior 
incarnation of 68 O.S. 2011 § 
3106.

[7] 
Ziegler concerned notice to a mortgagee of real property being sold for 
unpaid taxes, which at the time was controlled by 68 O.S. Supp. 1986 § 24331, with 
different but also quite similar language and requirements to 68 O.S. 2011 § 
3106.
 


 


WINCHESTER, J., with whom TAYLOR, J. joins, dissenting,
¶1 The Oklahoma State Constitution, echoing the United States Constitution, 
provides that "[n]o person shall be deprived of life, liberty, or property, 
without due process of law." Although, as the majority notes, the "definitional 
sweep" of this clause is coextensive with its federal counterpart, this Court's 
decisions with regard to state constitutional questions are based on Oklahoma 
law. In Re Adoption of K.P.M.A., 2014 OK 85, ¶ 17, n.3, 341 P.3d 38, 
44.
¶2 The United States Supreme Court has held that, to comport with the Due 
Process Clause, States must provide "notice reasonably calculated, under all the 
circumstances, to apprise interested parties of the pendency of the action." 
Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 
(1950). The Court in Dusenbery v. United States, 534 U.S. 161, 170 
(2002), expressly noted, however, that "heroic efforts" are not required. To the 
contrary, the Supreme Court has rejected "[a] construction of the Due Process 
Clause which would place impossible or impractical obstacles in the way [of the 
State]." Mullane, 339 U.S. at 313-14. In determining whether an 
individual has been afforded due process, therefore, courts must balance the 
State's interest in efficiently managing its administrative system and an 
individual's interest in adequate notice. See id. at 314. To that end, 
the Supreme Court has recognized that states need not achieve actual notice in 
order to satisfy the requirements of the Due Process Clause. See 
Dusenbery, 534 U.S. at 169-70.
¶3 Oklahoma's statute governing notice of delinquent taxes, 68 O.S. 2011, § 3106,[1] mandates 
that--prior to selling real property for which taxes have been unpaid for three 
or more years--county treasurers publish notice of taxes owed upon the property, 
as well as send notice by certified mail to the record owner of the property. 
Nothing in the text of the law requires that the county treasurer take 
additional steps to ensure the property owner receives actual notice. In 
fact, the statute notes that "[f]ailure to receive said notice shall not 
invalidate said sale." Id.
¶4 In rare cases, however, this Court has required that the State do more 
than simply comply with the letter of the law in order to provide due process. 
But the only circumstances in which notice by mail and publication is inadequate 
under the Due Process Clause involve "situations where the state or local 
government knew at the outset that its notice efforts were destined to fail and 
knew how to rectify the problem prior to sending notice." Id. at 244 
(citing Robinson v. Hanrahan, 409 U.S. 38, 39 (1972) (per curiam) 
(intended recipient known to be in jail); Covey v. Town of Somers, 
351 U.S. 141, 145 (1956) (intended recipient known to be incompetent and without 
a guardian)). In those situations, the county treasurer certainly has a 
responsibility to comply with the statute and take steps to ensure proper notice 
is served. But this duty arises from the implicit requirement that notice of an 
impending tax sale must be made in good faith--not from any requirement that 
county treasurers must always take steps to ensure actual notice. See 
Mullane, 339 U.S. at 315.
¶5 Even though the county treasurer in this case knew from the certified mail 
receipt that the attempted delivery of notice had been unsuccessful, he 
certainly did not believe at the outset that his efforts were "destined to 
fail." A certified mail receipt verifies "that an article was delivered or that 
a delivery attempt was made."[2] The absence of any receipt, therefore, indicates 
that the mail was lost, delayed, or otherwise rerouted from its intended 
destination, and should undoubtedly trigger an additional duty for the county 
treasurer to resend the mail or take other steps to comply with the statute. A 
"not deliverable as addressed" receipt, on the other hand, simply indicates that 
the certified mail service was unable to make actual contact with the property 
owner. Because the statute does not require the county treasurer to provide 
actual notice, and because a good-faith attempt at notice is sufficient under 
the Due Process Clause, see Mullane, 339 U.S. at 315, service that 
results in a "not deliverable as addressed" receipt (in addition to publication) 
satisfies the statutory and constitutional requirements.
¶6 A majority of this Court would essentially redraft 68 O.S. 2011, § 3106 and impose 
unreasonable and impractical burdens on the State in the exercise of its 
administrative duties. Specifically, the majority suggests that the county 
treasurer should have located the check with which the property owner last paid 
taxes. See supra, at ¶¶ 28-29. Not only was the check in this case 
written more than three years prior to the notice of delinquent taxes, but also 
there was no indication that the address on the check was in fact the owner's 
new place of residence. Many people use checks that do not match their current 
addresses, either for the sake of convenience (e.g., so they do not need 
to order new checks after changing addresses) or due to special circumstances 
(e.g., when somebody other than the property owner pays the taxes). But 
under the majority's logic, 68 O.S. 
2011, § 3106 requires that the county treasurer record every address on 
every check and every other document that comes to his office, and then send 
notice to each of those addresses in order to comport with due process. The 
majority demands that, whenever a county treasurer doubts whether an interested 
party has actually received notice, he must consider additional methods to 
provide such notice, including, but not limited to, sending certified mail to 
every address associated with the property owner, whether or not any of those 
addresses is the address of record in the county treasurer's office.[3] And if those 
notices are ineffective, then the treasurer must consider additional 
methods, ad infinitum, to the point that he would effectively be 
required to achieve actual notice.
¶7 Not only does the majority's interpretation of the statute disregard 
existing case law holding quite clearly that county treasurers need not achieve 
actual notice, it also places counties at the mercy of delinquent taxpayers. To 
avoid being served notice, tax evaders could simply avoid contact with process 
servers standing on their doorsteps, or move to a different address and neglect 
to tell the county treasurer. Under the majority's holding, such evasive antics 
would require the treasurer to employ additional tactics to make contact with 
the property owner until either all possible methods are exhausted or the 
treasurer decides that the task is not worth its cost. Such requirements 
increase the amount of time and money that must be expended by the county to 
comply with the law. Those additional costs are then passed on to citizens who 
actually do pay their taxes.
¶8 Both parties and the majority recognize that the McIntosh County Treasurer 
in this case complied with the requirements of 68 O.S. 2011, § 3106. It is not the 
fault of the county that Crownover did not report his change of address, and it 
should not fall to the county to engage in a paper chase to locate a missing 
person. See Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 792, 798 
(1983) (holding that "notice mailed to [the affected party's] last known 
available address" is sufficient to satisfy due process). The constitutional 
requirement is not that individuals be provided with every process of 
law, only due process of law. What the majority opinion--and the Supreme 
Court in Jones v. Flowers, 547 U.S. 220 (2006)--fails to supply is a 
clear definition of due process. Without that clarity, there is no limit to how 
far counties must go to provide notice sufficient under the Due Process Clause. 
Because in this case the county treasurer gave due process in supplying notice 
under the terms of the statute, the ruling of the Court of Civil Appeals should 
be affirmed. For these reasons, I respectfully dissent.

FOOTNOTES

[1] The 
statute in pertinent part reads: "The county treasurer, according to the law, 
shall give notice of delinquent taxes and special assessments by publication 
once a week for two (2) consecutive weeks at any time after April 1, but prior 
to the end of September following the year the taxes were first due and payable, 
in some newspaper in the county to be designated by the county treasurer. . . . 
In addition to said published notice, the county treasurer shall give notice by 
mailing to the record owner of said real property as of the preceding December 
31 or later as reflected by the records in the office of the county assessor, 
which records shall be updated based on real property conveyed after October 1 
each year . . . ."

[2] United 
States Postal Service, Certified Mail Receipt (Form 3800), available 
at 
https://store.usps.com/store/browse/productDetailSingleSku.jsp?productId=P_FORM_3800.

[3] Because 
the majority does not specify what "other reasonable method[s]" are required to 
provide due process, such methods could easily include browsing phone books and 
searching the Internet for addresses associated with the property owner. Those 
resources are much easier for the county treasurer to locate (and maintain) than 
is a three-year-old check, but surely no one would mandate that county officials 
read through phone books to discharge their statutory duties. Yet that is the 
effect of the majority's argument.
 




 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1986 OK 74, 730 P.2d 506, 57 OBJ 2977, Luster v. Bank of Chelsea
Discussed at Length
 1987 OK 114, 746 P.2d 1135, 58 OBJ 3282, Fair School Finance Council of Oklahoma, Inc. v. State
Discussed
 1989 OK 113, 780 P.2d 703, 60 OBJ 1783, Wells Fargo Credit Corp. v. Ziegler
Discussed at Length
 1989 OK 146, 782 P.2d 924, 60 OBJ 2833, Davis v. Leitner
Discussed
 2003 OK 30, 66 P.3d 442, GLADSTONE v. BARTLESVILLE INDEPENDENT SCHOOL DISTRICT NO. 30
Discussed
 2004 OK 2, 87 P.3d 559, WATHOR v. MUTUAL ASSURANCE ADMINISTRATORS, INC.
Discussed
 2004 OK 38, 92 P.3d 96, MARTIN v. ARAMARK SERVICES, INC.
Discussed
 1996 OK 48, 914 P.2d 1051, 67 OBJ 1173, Carmichael v. Beller
Discussed
 1929 OK 457, 282 P. 679, 140 Okla. 74, WILSON v. LEVY
Discussed
 2008 OK 90, 195 P.3d 1269, GARCIA v. TED PARKS, L.L.C.
Discussed at Length
 2009 OK 49, 212 P.3d 1223, MILLER v. DAVID GRACE, INC.
Discussed at Length
 2011 OK 22, 251 P.3d 741, DAFFIN v. STATE ex rel. OKLAHOMA DEPT. OF MINES
Discussed at Length
 1924 OK 937, 229 P. 1039, 103 Okla. 258, SMITH v. BOSTAPH
Discussed
 2013 OK 48, 306 P.3d 544, SHEFFER v. CAROLINA FORGE COMPANY, L.L.C.
Discussed
 2014 OK 85, IN RE ADOPTION OF K.P.M.A.
Discussed
 2014 OK 86, EDWARDS v. CITY OF SALLISAW
Cited
 2014 OK 106, TRINITY BAPTIST CHURCH v. BROTHERHOOD MUTUAL INSURANCE SERVICES, LLC
Discussed
 2000 OK 19, 997 P.2d 849, 71 OBJ 731, Southwestern Commercial Capital, Inc. v. Cornett Packing Co.
Discussed at Length
 1998 OK 30, 958 P.2d 128, 69 OBJ 1404, GAYLORD ENTERTAINMENT CO. v. THOMPSON
Discussed
Title 68. Revenue and Taxation
 Cite
Name
Level

 68 O.S. 3105, Real Property to be Sold for Delinquent Taxes and Special Assessments
Discussed at Length
 68 O.S. 24312, Renumbered as 68 O.S. § 3106 by Laws 1988, HB 1750, c. 162, § 161, eff. January 1, 1992
Cited
 68 O.S. 24331, Renumbered as 68 O.S. § 3127 by Laws 1988, HB 1750, c. 162, § 161, eff. January 1, 1992
Cited
 68 O.S. 3106, Notice of Sale - Fees for Publication
Discussed at Length
 68 O.S. 3601, Short Title
Cited